**James E. BIGGS et al., Appellants,**

v.

**Harvey Lee STEWART et al., Appellees.**

**No. 79–644.**

District of Columbia Court of Appeals.

Argued March 13, 1980.

Decided Aug. 19, 1980.

Charles H. Acker, III, Washington, D. C., with whom Leonard C. Collins, Washington, D. C., was on the brief, for appellants.

Clement Theodore Cooper, Washington, D. C., for appellees.

Before KELLY, KERN and HARRIS, Associate Judges.

PER CURIAM:

Appellants James R. Biggs, Phyllis M. Wilson, and their assignee, Commonwealth Land Title Insurance Company ("Commonwealth"), appeal a June 13, 1979 contempt ruling and order directing payment of $7,426 in attorney's fees and fines to Clement Theodore Cooper, counsel for appellees Doris Leola Stewart and Harvey Lee Stewart. We reverse.

The pertinent facts are that on June 8, 1966, the Stewarts executed a promissory note for $7,000, secured by a deed of trust on their residential property in Northwest Washington. After several negotiations, the note came into the possession of appellants Biggs and Wilson, who, upon default, initiated foreclosure proceedings in May 1973.

Appellees filed suit for a preliminary injunction against the foreclosure, cancellation of the promissory note and deed of trust, and compensatory and punitive dam-

ages. An injunction issued and on June 14, 1974, after a trial on the merits, the court cancelled the promissory note and ordered Biggs and Wilson[1] to pay the Stewarts $3,500 in attorney's fees, $426 in costs, $3,300 in compensatory damages, and $2,500 in punitive damages. On Biggs' and Wilson's appeal, this court found insufficient evidence to support the trial court's conclusions and remanded for further findings of fact. *Biggs v. Stewart,* D.C.App., 361 A.2d 159 (1976).[2]

On April 5, 1978, being informed that the parties had agreed on a settlement, the trial court granted their "joint petition for [a] consent order"[3] and decreed that the Stewarts pay $7,000, plus court costs, to Biggs and Wilson, who, in turn, were *concurrently* to pay Clement T. Cooper, the Stewarts' attorney, $2,000 in counsel fees. The note and deed of trust were to be respectively considered paid and satisfied, and released, upon the contemporaneous exchange of payments.[4]

On August 23, 1978, Biggs and Wilson filed a praecipe assigning their interest, rights and obligations under the April 5 "order or judgment" to Commonwealth, which, after being told by the clerk of the court that judgment had not been entered,

filed a motion for judgment of $5,000 against the Stewarts.[5] The Stewarts filed an opposition to Commonwealth's judgment motion and moved for a contempt order against Biggs and Wilson, to compel their payment of the $2,000 April 5 settlement figure.

Various contempt motions, assorted motions and cross-motions for sanctions, and sundry oppositions to each were subsequently filed by the parties to this appeal. After a hearing on February 15, 1979, the trial court ruled, on June 13, 1979, that (1) Biggs and Wilson were in contempt of the June 14, 1974 court order; (2) Commonwealth (the assignee) was in willful contempt of the April 5, 1978 order; (3) Biggs and Wilson (the assignors) were also in contempt of the April 5 order; and (4) Commonwealth was not entitled to judgment in any amount. It ordered the following payments to the Stewarts' counsel: (1) $3,500 plus $426 costs by Biggs and Wilson, (presumably under the June 14, 1974 order); (2) $2,000 by Commonwealth under the April 5 order; and (3) $1,500 by Commonwealth as sanctions and costs. It also declared the promissory note null and void and specifically held that Commonwealth was entitled to take nothing.[6] This appeal followed.

1. The trial court dismissed the action against two codefendants and entered default judgments against two others, who did not appeal.

2. The trial court had concluded that the Stewarts were not liable on the note, either because Biggs and Wilson were not holders in due course, since they had actual notice of the note's infirmities, or because the Stewarts had established a real or personal defense to the note. However, there were no findings to support the conclusion that Biggs and Wilson had notice of any defenses to the note; the real and/or personal defenses of the Stewarts were never specified; and the damages, particularly the award to Mrs. Stewart, were not properly substantiated.

3. A docket entry of March 28, 1978, reads: Counsel present in Chambers have mutually agreed on their differences in the best interest of their client. Consent order to be submitted, approved and signed by all parties. O.T.B.P. JUDGE ATKINSON

4. In the meantime, the Stewarts refinanced their property with Perpetual Building and Loan Association, which took back a first deed of trust. Commonwealth, the title insurer, attempted to protect Perpetual by securing a second note for $7,100, and an indemnification agreement from the Stewarts. However, when the Stewarts sold the property in October 1977, Commonwealth failed to collect the $7,000. In order to protect Perpetual's first deed of trust, Commonwealth bought out Biggs' and Wilson's outstanding interest in the property and became their assignee on August 23, 1978.

5. This sum represented the difference between the Stewarts' obligation and their recovery under the April 5 order. The Stewarts had not yet tendered the $7,000 sum to the appellants, nor, according to their counsel at oral argument, have they ever attempted to do so, despite repeated requests from appellants.

6. Although these awards add up to $7,426, the court inconsistently concluded that it was its "order and intent . . . that the [plaintiffs'] counsel . . . be paid a total sum of $3,500 and $426 costs, whether paid by one party or all three."

We face several overlapping issues here, all related to the trial court's total disregard of the effect of the April 5, 1978 consent decree, and its validity as a final resolution of the outstanding claims between the parties to it.

As best we can understand it, the trial court was under the impression that this court's remand in *Biggs v. Stewart, supra,* did not disturb ("does not question") its award of attorney's fees to appellees' counsel, apparently because this court "simply remanded, but did not reverse" the June 14, 1974 decision and never explicitly addressed the issue of counsel fees. If this be so, the trial court's reading of *Biggs* is clearly incorrect. Our opinion did not restrict the trial court's review on remand; on the contrary, we held that "the [trial] court should draw its attention to those areas we have outlined, including *but not limited to,* the notice issue, real and/or personal defenses, and the award of damages." *Id.* at 164 (emphasis added). We also granted leave to reopen the case, should it prove necessary, and take further evidence "so as to have a *complete* determination of *all* the issues . . . ."[7] *Id.* at 165 (emphasis added).

In any event, the remand/reversal distinction is irrelevant to the validity of the supervening trial court's consent decree entered into on remand.[8] No question has ever been raised that the consent decree was not intended to be a complete resolution of the claims between the parties arising from the attempted foreclosure of the Stewarts' property and the negotiations of their promissory note and deed of trust.

Therefore, we are left with the question of its enforcement.

Since appellees had not complied with the provisions of the consent decree and appellants allegedly stood ready to carry out their part of the agreement, appellant Commonwealth properly filed a motion for entry of judgment against appellees. Absent any request to set aside the decree, for good cause shown (i.e., fraud, duress, mistake, or other available procedural grounds), it should have been enforced.

*Reversed and remanded for further proceedings in accordance with this opinion.*

7. Redetermining the issues of liability and notice, particularly if such reconsideration resulted in a finding that the Stewarts were fully liable on the note, a concession which might be inferred from the terms of the April 5 consent decree, would inevitably affect the award of attorney's fees, since, in this jurisdiction, the "American Rule" is followed, whereby attorney's fees are not awarded to the prevailing party "absent a contract, a statutory provision, or a showing of unwarranted, oppressive, or vexatious conduct." *Wisconsin Avenue Assocs., Inc. v. 2720 Wisconsin Avenue Cooperative Ass'n, Inc.,* D.C.App., 385 A.2d 20, 24 (1978) (citing *1901 Wyoming Avenue Cooperative Ass'n v. Lee,* D.C.App., 345 A.2d 456

(1975)); *McIntosh v. Aetna Life Ins. Co.,* D.C. App., 268 A.2d 518 (1970).

8. Appellees' counsel conceded, both in their brief and at oral argument, that

Rather than embark upon a second Trial . . . on remand, . . . the parties entered into a Consent Judgment and Order on April 5, 1978 [under the terms of which] Counsel for Appellees agreed to accept a reduction in legal fees from $3,500.00 [the amount of the June 14, 1974 award] downward to $2,500.00 [and the appellees would] pay $7,000.00.