**Hugues Denver AKASSY,
Appellant/Cross–
Appellee,**

v.

**WILLIAM PENN APARTMENTS
LIMITED PARTNERSHIP,
Appellee/Cross–Appellant.**

Nos. 02–CV–141, 02–CV–291.

District of Columbia Court of Appeals.

Argued March 5, 2003.
Decided Feb. 2, 2006.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

Elizabeth Figueroa, for appellant/cross-appellee.

Roger D. Luchs, Washington, DC, for appellee/cross-appellant.

Jonathan Smith, Eric Angel, Julie H. Becker, George R. Kucik, Deanne M. Ottaviano, Jennifer L. Myron and Jarrod H. Becker filed a brief amici curiae on behalf of The Legal Aid Society of the District of Columbia.

Before WASHINGTON, Chief Judge, FARRELL, Associate Judge, and WAGNER, Senior Judge.*

WAGNER, Senior Judge:

William Penn Apartments Limited Partnership (the landlord), appellee/cross-appellant, filed a complaint for possession of real property against appellant/cross-appellee, Hugues Denver Akassy (the tenant), based upon the tenant's failure to pay rent. The court entered a default judgment against the tenant when he failed to appear for the scheduled hearing. Before any eviction could take place, the parties agreed to the entry of a consent order under the terms of which the default judgment remained in effect with its execution stayed conditioned upon the tenant's payment of past due rent and court costs by a date certain and compliance with a "pay-on-time" provision for one year. Before that year ended, the landlord notified the tenant of a rent increase, but the tenant tendered payment in the former amount and subsequently filed a tenant-petition challenging the rental increase with the District of Columbia Department of Consumer & Regulatory Affairs (DCRA). The trial court (Judge Blackburne–Rigsby) granted the landlord's motion to vacate the stay, and the tenant appealed from that order. Thereafter, the trial court (Judge Gregory Mize) granted the tenant's motion for a stay of the writ of eviction pending appeal, and the landlord appeals from that order. The tenant's principal argument on appeal is that the trial court erred in setting aside the stay based on the alleged breach of the "pay-on-time" provision of the consent order where the tenant refused to pay a contested rent increase implemented after the consent order was entered and challenged its legality administratively. He also contends that the trial court improperly permitted unilateral modification of the agreement, miscon-

---

* Judge Washington was an Associate Judge of the court at the time of argument. His status changed to Chief Judge on August 6, 2005.

Judge Wagner was Chief Judge of the court at the time of argument. Her status changed to Senior Judge on December 21, 2005.

strued the term "rent" as used in it, and failed to set aside the agreement based on a mistake of fact. In its appeal, the landlord argues that the trial court erred in granting a stay pending appeal.

We find no error arising out of the trial court's interpretation of the agreement nor any showing of a mistake of fact or unilateral modification. However, we hold that where, as here, the determination of whether a tenant has breached a consent agreement, thereby entitling the landlord to evict him, rests solely upon the legality of a rental increase which the tenant has challenged before the agency having primary jurisdiction over that issue, the trial court must stay the proceeding under the principles enunciated in *Drayton v. Poretsky Mgmt. Inc.*, 462 A.2d 1115 (D.C.1983), pending final disposition of the administrative proceeding.[1] Therefore, we reverse and remand for further proceedings consistent with this opinion. With respect to the landlord's challenge to the *pendente lite* stay, we find no error warranting reversal.[2]

## I. Factual Background

The landlord filed a complaint for possession of the apartment that the tenant leased from it alleging that the tenant had failed to pay rent due for June and July 2001 totaling $1723. At that time, the tenant's monthly rent was $879.00. The tenant failed to appear on the scheduled hearing date, and a default judgment for possession was entered against him on August 15, 2001. The landlord had issued a writ of eviction. On August 29, 2001, the tenant appeared, *ex parte*, and requested a stay of the writ, and the trial court (Judge Joan Zeldon) granted the stay and continued the case to secure the presence of the landlord's counsel. On September 5, 2001, the parties entered an agreement settling their dispute which was approved by the court (Judge John Bayly). The consent judgment stated:

> Defendant [tenant] agrees that Plaintiff [landlord] is entitled to the default judgment for possession entered on August 15, 2001. In addition, the court will enter a[T]rans [L]ux[3] amount in the amount of $1,931.34 representing the current balance of rents + costs owed throught [sic] September 30, 2001. Plaintiff agrees to a continuance of the stay, entered by J. Zeldon on 8/29/01, of the judgment for possession until September 18, 2001, at which time plaintiff will be entitled to an immediate issuance

---

**1.** During the pendency of this litigation, the Office of Adjudication (OAD) of the DCRA entered a decision and order determining that the rental increase demanded by the landlord, which is at issue in this case, was illegal and improper, and it ordered, *inter alia,* a roll back to the rent previously charged of $879 per month. The landlord has informed this court, and the tenant does not dispute, that the landlord appealed the OAD's decision to the D.C. Rental Housing Commission. Therefore, it contends correctly that the OAD's decision is not final while its appeal is pending. *See Strand v. Frenkel,* 500 A.2d 1368, 1374 (D.C.1985) (citing *Washington Federal Sav. & Loan Ass'n. v. Whiteside,* 488 A.2d 936 (D.C. 1985)) (observing the holding in *Whiteside* to the effect that "when the [Rental Accommodations Commission] RAO has primary juris-

diction over a matter, a Superior Court action to enforce rights as to the property must be held in abeyance until both the administrative remedies (through final RHC action) have been exhausted.").

**2.** The absence of a *Drayton* stay under the circumstances presented here has the effect of ignoring the agency's primary jurisdiction over a determinative issue in the court proceeding. Although the tenant was afforded the protection of a *pendente lite* stay, he would be exposed to potential eviction upon completion of the appeal, unless he prevailed on appeal.

**3.** *Trans–Lux Radio City Corp. v. Service Parking Corp.,* 54 A.2d 144 (D.C.1947).

of a writ of possession if Defendant has not then paid said balance of $1,931.34 in full. Defendant agrees to [waive] his right to seek further stay of the judgment for possession entered in this matter. Defendant further agrees to waive any further right of redemption in this matter. Defendant agrees that all future monthly rental payments be made before the 5th day of each month, without demand, for the next one (1) year (said obligation ending October 2002). Should any future monthly payment be made untimely, after the 5th day of the month, within said (one) 1 year period, Landlord shall be entitled, upon filing a motion [with] at least 5 days notice to tenant to seek a judgment for possession; and tenant shall waive his right to seek a stay or redeem any judgment entered based upon his failure to pay his rent timely as hereto agreed. If the payment of $1,931.34 is paid as agreed, on or before September 18, 2001, the writ of eviction entered in this matter shall be permanently quashed.

The tenant made the payment of $1,931.34 as required and continued to pay the rent as it fell due through December 2001. By letter dated November 20, 2001, the landlord informed the tenant that the rent ceiling on his apartment was $3818.00 and that his rent would be increased from $879.00 to $1050.00 effective January 1, 2002. However, the tenant sent the landlord a check for the January rent in the amount of $879.00. By letter dated January 7, 2002, the landlord returned the tenant's check and informed him that if he did not provide a replacement check in the amount charged, it would "proceed to court to enforce the agreement." The tenant did not comply. On January 14, 2002, the tenant filed a complaint with the DCRA's Housing Regulation Administration alleging that the rent ceiling was improper and too high for the condition of his apartment. He also alleged that: (1) the landlord discriminated against him because he complained about the poor condition of the apartment and because of his race and nationality (African–French); and (2) services and/or facilities in his apartment had been eliminated permanently or substantially reduced. The tenant also stated in the petition that although his rent had been increased in the past, this was the largest increase he had ever received.

On January 23, 2002, the landlord filed in the Superior Court a "Motion to Vacate the Stay Imposed by Settlement Agreement" based upon the tenant's failure to pay the rent in the full amount. In its motion, the landlord explained that applicable law authorized a rental increase; that the tenant refused, without lawful reason, to pay the increased amount in violation of the agreement; and that the tenant had given up his right to redeem the tenancy. The landlord requested that the stay be set aside and that it be permitted to file a writ of eviction with no right of redemption for the tenant. The tenant filed an opposition to the motion, *pro se,* in which he made essentially the same arguments that he made in his filing with the DCRA challenging the rent increase. Following a hearing on the motion, the trial court (Judge Blackburne–Rigsby) granted the landlord's motion and entered an order allowing a writ to issue and providing that "[d]efendant shall have no right to redemption with respect thereto." The tenant filed a notice of appeal from that order.

The tenant, represented by counsel, filed a motion to stay the writ of eviction pending disposition of the appeal. Following a hearing, the trial court (Judge Mize) granted the motion. In granting the motion, the trial court explained:

I believe that given the holding in the *Drayton [v. Poretsky Management,* Inc.,

462 A.2d 1115 (D.C.1983)] case, the policy in this jurisdiction is to have proceedings in this court stayed while the increase is being .contested and this is an unusual situation where the matter comes up after a consent judgment praecipe has been executed. However, that September 5th agreement of the parties does not make it clear that the payments that the defendant was obligated to make on a monthly basis should automatically include a rent increase. It's just not on the face of the document shown to be in the agreement of the parties. And given the lack of clarity in that regard, and the policy of *Drayton,* I believe the defendant's contesting that increase raises a significant legal issue that justifies a stay.

The court also ordered, and the tenant consented to, a bond requiring the tenant to pay into the court registry each month the full amount of rent, including the increase. The landlord appealed from the trial court's order granting a stay pending appeal. This court consolidated the two appeals for all purposes.

## II. Tenant's Arguments

The tenant makes several arguments in support of his position that the trial court erred in setting aside the stay of the writ of eviction based upon his refusal to pay the amount of the rental increase. Specifically, he contends that: (1) the consent agreement is ambiguous with respect to whether the term "rent" included future increases; (2) the agreement requires him to pay only the amount of rent in effect at the time he entered it; (3) the agreement is invalid and unenforceable because it prevents him from exercising his right to challenge the increase; (4) the agreement resulted from a mistake of fact, and therefore, should have been set aside; and (5) he complied with those terms of the agreement that entitled him to a permanent

stay of eviction. The landlord responds that there is no ambiguity in the agreement; that the agreement does not preclude lawful rent increases or the filing of a new writ of eviction upon breach of its terms; and that the agreement did not infringe upon the tenant's right to challenge the increase.

### A. *Ambiguity*

It is the tenant's position that the term "rent" as used in the agreement can mean only the amount of rent in effect at the time the landlord sued him and that this is the amount that he agreed to pay. Alternatively, he argues that the term is ambiguous, requiring extrinsic evidence to determine its meaning, and therefore, a remand is required for a hearing on the meaning of the term.

### (1) *Applicable Legal Principles*

■■ "A consent judgment is an order of the court, 'indistinguishable in its legal effect from any other court order, and therefore subject to enforcement like any other court order.'" *Moore v. Jones,* 542 A.2d 1253, 1254 (D.C.1988) (quoting *Padgett v. Padgett,* 472 A.2d 849, 852 (D.C. 1984)) (other citation omitted). It is also a contract that "should generally be enforced as written, absent a showing of good cause to set it aside, such as fraud, duress, or mistake." *Camalier & Buckley, Inc. v. Sandoz & Lamberton, Inc.,* 667 A.2d 822, 825 (D.C.1995) (quoting *Moore,* 542 A.2d at 1254); *see also Fields v. McPherson,* 756 A.2d 420, 424 (D.C.2000) (recognizing that only the most compelling reasons, such as fraud, duress or mistake, will justify modification of a voluntary settlement agreement) (citations omitted).

■■ "A contract is ambiguous when it is reasonably susceptible of different constructions or interpretations, or of two or more different meanings." *Deutsch v.*

*Barsky,* 795 A.2d 669, 673 (D.C.2002) (quoting *National Trade Prods. v. Information Dev. Corp.,* 728 A.2d 106, 109 (D.C. 1999)) (quoting in turn *Rastall v. CSX Transp., Inc.,* 697 A.2d 46, 51 (D.C.1997)) (internal quotation marks omitted). Whether a contract is ambiguous is a question of law, and we review the trial court's determination of the issue *de novo. Sacks v. Rothberg,* 569 A.2d 150, 154 (D.C.1990) (citing *Dodek v. CF 16 Corp.,* 537 A.2d 1086 (D.C.1988)). In considering whether a contract is ambiguous, we examine the document on its face, giving the language used therein its plain meaning. *Id.* (citing *Kass v. William Norwitz Co.,* 509 F.Supp. 618, 625 (D.D.C.1980)); *1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.,* 485 A.2d 199, 205 (D.C.1984) (citing *Bolling Fed. Credit Union v. Cumis Ins. Soc'y, Inc.,* 475 A.2d 382, 385 (D.C.1984)). "Extrinsic evidence of the parties' subjective intent may be resorted to only if the [contract] is ambiguous." *Id.* at 205–06. However, "[t]he endeavor to ascertain what a reasonable person in the position of the parties would have thought the words of a contract meant applies whether the language is ambiguous or not." *Sagalyn v. Foundation for Pres. of Historic Georgetown,* 691 A.2d 107, 112 n. 8 (D.C.1997) (citing *1010 Potomac Assocs.,* 485 A.2d at 205–06). In this context, a reasonable person is: (1) presumed to know all the circumstances surrounding the contract's making; and (2) bound by usages of the terms which either party knows or has reason to know. *Intercounty Constr. Corp. v. District of Columbia,* 443 A.2d 29, 32 (D.C.1982) (citations omitted). "[T]he reasonable person standard is applied both to the circumstances surrounding the contract and the course of conduct of the parties under the contract." *Id.* (citing *1901 Wyoming Ave. Coop. Ass'n v. Lee,* 345 A.2d 456, 461–62 (D.C.1975)). If an ambiguity in the contract raises a factual

issue, it must be resolved by a fact finder. *See Rastall,* 697 A.2d at 51 (citation omitted). Applying these general principles of contract law, we consider the tenant's ambiguity argument and the landlord's response.

### (2) *Analysis*

 The parties' agreement provides that "all future rental payments be made before the 5th day of each month without demand, for the next one (1) year . . . [,]" in default of which, the landlord can seek possession, and the tenant also waived "his right to seek a stay or redeem any judgment entered based upon his failure to pay his rent timely as hereto agreed." The agreement is silent on the amount of rent to be paid monthly. It does not specify whether rent means the rental amount in effect at the time the parties entered the agreement, as the tenant contends, or the current rent plus any lawful increases, as the landlord contends. The tenant argues that there is no provision of the agreement authorizing rent increases. The landlord counters that there is no provision in the agreement barring rent increases and that rent increases are permitted by law.

The term, "rent" as commonly understood, is unambiguous. Generally, it is defined to mean "[p]ayment, usually of an amount fixed by contract, made by a tenant at specified intervals in return for the right to occupy or use the property of another." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1529 (3d ed. 1992). However, in the context of our local landlord-tenant law, this court has stated that its meaning "is a term of art." *Kapusta v. District of Columbia Rental Hous. Comm'n,* 704 A.2d 286, 287 (D.C. 1997) (defining rent for purposes of determining rental refund for overcharges under applicable law).

■ The landlord contends that the contract is governed by the law in effect at the time, which permitted rent increases. The "laws in effect at the time of the making of a contract form a part of the contract 'as fully as if they had been expressly referred to or incorporated in its terms.'" *Double H Hous. Corp. v. Big Wash, Inc.*, 799 A.2d 1195, 1199 (D.C.2002) (quoting *Farmers' & Merchants' Bank of Monroe v. Federal Reserve Bank of Richmond*, 262 U.S. 649, 660, 43 S.Ct. 651, 67 L.Ed. 1157 (1923)) (other citation omitted); *see also O'Malley v. Chevy Chase Bank*, 766 A.2d 964, 969 n. 6 (D.C.2001) (recognizing that "[i]n general, contracts are construed to incorporate the law existing at the time of execution.") (citations omitted). At the time the parties entered the agreement in this case, the term "rent" was defined by statute as "the entire amount of money, money's worth, benefit, bonus or gratuity *demanded, received, or charged* by a housing provider ...." D.C.Code § 45–2503(28) (1981) (recodified at D.C.Code § 42–3501.03(28) (2001)) (emphasis added). This definition has been interpreted to mean the amount that the landlord charges or demands, rather than the amount that the tenant actually pays. *See Kapusta, supra,* 704 A.2d at 287 (affirming an order refunding a rental overcharge of sums that the tenant never paid).

In *Kapusta, supra,* the housing provider rented an apartment to the tenant at an amount in excess of the rent ceiling in violation of the local rental housing law. *Id.* at 286. The tenant had failed to pay any rent for several months, and the Rental Housing Commission (RHC) ordered a refund of the overcharges for those months. *Id.* at 287. The landlord argued

that the RHC erred in ordering a rent refund for money that he had never collected. *Id.* This court determined, however, that the RHC's order for a refund was consistent with the statutory definition of rent that included the amount "*demanded, received, or charged*" whether or not collected by the landlord. *Id.* (citing D.C.Code § 45–2503(28) (1996)) (re-codified as D.C.Code § 42–3501.03(28) (2001)). Considering this statutory definition for the term, along with the statute imposing liability upon the landlord for rent demanded in excess of the applicable rent ceiling, *see* D.C.Code § 45–2591(a) (1996),[4] this court upheld the RHC's order. *Id.* Similarly, in the present case, given the statutory definition of the term "rent" in effect at the time the parties entered the agreement, it is reasonable to conclude that the meaning of the term as used in their agreement was the amount charged, including any increases lawfully implemented. The law then in effect allowed a landlord, upon compliance with other provisions of the statute, to implement a rent adjustment when "a full 180 days ha[d] elapsed since any prior adjustment."[5] *See* D.C.Code § 42–3502.08(g) (2001); 14 DCMR §§ 4205–4206 (1991).

## B. *Claim of Unilateral Modification*

■ The tenant argues that interpreting the agreement to allow for a rental increase results in a unilateral modification of the agreement. Generally, a consent agreement is enforceable as written, absent good cause for setting it aside. *Moore, supra,* 542 A.2d at 1254 (citing *Biggs v. Stewart*, 418 A.2d 1069, 1071 (D.C. 1980) (other citation omitted)). We have said that "'[t]o encourage voluntary settlements, settlement agreements should not

---

4. Re-codified as D.C.Code § 42–3509.01 (2001).

5. For purposes of these appeals, we need not, and do not decide whether the landlord's implementation of the rent increase complied with these statutory requirements.

be modified in favor of either party, absent the most compelling reasons.'" *Camalier & Buckley, supra,* 667 A.2d at 825 (quoting *Moore,* 542 A.2d at 1255). This principle, however, does not preclude interpreting undefined terms in the agreement consistent with the law in effect at the time of its making, which is deemed to be incorporated into the terms of the agreement. *See Double H Hous. Corp., supra,* 799 A.2d at 1199 (holding that laws in effect when a contract is made are incorporated into its terms) (citations omitted).

▇▇ Contrary to the tenant's argument, interpretation of the agreement consistent with the foregoing rule of interpretation does not amount to a modification of the contract. A modification of a contract occurs when there is an alteration of its provision to include new or additional obligations, while leaving the original agreement otherwise intact. *See Hildreth Consulting Eng'rs v. Larry E. Knight, Inc.,* 801 A.2d 967, 974 (D.C.2002) (citations omitted) (explaining modification where effected by the contracting parties' agreement to alter the contract by including additional obligations); *see also Enserch Corp. v. Rebich,* 925 S.W.2d 75, 83 (Tex. App.1996) ("Modification of a contract is some change in an original agreement which introduces a new or different element into the details of the contract but leaves its general purpose and effect undisturbed.") (citation omitted). Since the law in effect at the time of the contract is deemed to be a part of it, *see Double H*

*Hous. Corp., supra,* 799 A.2d at 1199, construing the contract consistent with the law then in effect does not introduce a new or different element. It simply recognizes an element that existed at the time the parties made the agreement and that formed a part of the contract. *See id.*

Moreover, a party to an agreement is bound by usages of the terms which he or she had reason to know. *Intercounty Constr. Corp., supra,* 443 A.2d at 32. Here, the parties knew or had reason to know that the rent control laws permitted a landlord to implement rent increases from time to time.[6] Indeed, the tenant acknowledged that his rent had been increased yearly since he first occupied the unit in 1997. Thus, the tenant was aware that the amount of rent could be increased during his tenancy. For all of these reasons, we must reject the tenant's argument that construing the agreement consistent with the law in effect at the time the agreement was entered results in a unilateral modification of the agreement.

The tenant argues that interpreting the term "rent" to mean the amount demanded or charged by the landlord effectively allows the landlord to demand illegal rents. There is always the possibility that someone will violate the law, but there is no presumption to that effect.[7] Reading the term in this manner does not negate the tenant's right to challenge the rent increase demanded when there are grounds for doing so, just as the tenant did in this case. *See* D.C.Code § 42–3502.06(e) (2001)

---

**6.** This assumes that there was no contrary provision in the parties' lease agreement precluding the implementation of rent increases authorized by law. The tenant makes no claim that his lease contract limited the landlord's right to charge increased rents when authorized by law.

**7.** The tenant has a significant remedy against a landlord who seeks to charge rents in excess

of the amount permitted by law. A landlord who demands rent in excess of the rent ceiling is liable to the tenant for the excess demanded and can be ordered to pay treble damages. *See Kapusta, supra,* 704 A.2d at 287 (citing D.C.Code §§ 45–2591(a),—2503 (28) (1996) and 14 DCMR § 4217.1 (1991)) (holding the landlord liable for overcharges demanded even though not collected).

("A tenant may challenge a rent adjustment implemented under any section of this chapter by filing a petition with the Rent Administrator under § 42–3502.16."). Just as nothing in the parties' agreement precluded the landlord from implementing lawful rent increases, nothing in their agreement precluded the tenant from exercising his right to challenge the increase. The law in effect giving the tenant the right to challenge a rent adjustment, absent any provision to the contrary in the document, must also be considered to form a part of the contract. *See Double H Hous. Corp., supra,* 799 A.2d at 1199.

In summary, we conclude that there was no ambiguity in the term "rent" as used in the parties' agreement. Although not defined in the parties' contract, the meaning of the term is defined by statute in this jurisdiction to mean the amount demanded, received, or charged by the housing provider. Nothing in the parties' agreement precluded the landlord from implementing a rent increase consistent with applicable law, or the tenant from challenging the legality of the increase demanded.

### C. *Claim of Unilateral Mistake*

■ For the first time on appeal, the tenant argues that the consent agreement should be set aside because of a unilateral mistake of fact. Generally, issues not raised in the trial court will be not be considered on appeal. *Aurora Assocs., Inc. v. Bykofsky,* 750 A.2d 1242, 1249 (D.C. 2000) (citing *Miller v. Avirom,* 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967)). Even assuming that the issue were adequately preserved for review, the limited circumstances under which a contract can be set aside for unilateral mistake have not been shown to be present here. *See Flippo Constr. Co. v. Mike Parks Diving Corp.,* 531 A.2d 263, 270–72 (D.C.1987) (adopting RESTATEMENT

(SECOND) OF CONTRACTS §§ 153, 154 (1981) as the standard to determine availability of unilateral mistake defense). A claim of unilateral mistake warranting relief requires a showing not only that one party was mistaken at the time of contracting as to a basic assumption having a material effect on the agreement, but also that "(a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) *the other party had reason to know of the mistake or his fault caused the mistake." Id.* at 272 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 153) (emphasis added). These factors are not present here. The tenant did not claim in the trial court that he assumed mistakenly, at the time he entered the consent agreement, that the landlord was relinquishing any rights he might have to increase the rent. The record shows that the tenant had several rent increases during his tenancy, and there is no suggestion that the landlord had reason to know that the tenant thought, even assuming that he did, that there could be no future increases. There is no showing in this record that it would be unconscionable to enforce an agreement that neither forecloses the landlord's right to charge lawful increases nor the tenant's right to challenge such increases as provided for by law. For the foregoing reasons, we reject this argument.

### D. *Claim of Entitlement to a Permanent Stay*

■ The tenant argues that the trial court erred in setting aside the stay and authorizing the issuance of the writ of eviction because he was entitled to have the writ "permanently quashed" by paying timely the back rent as specified in the consent agreement. The tenant relies upon that portion of the agreement that provides that "[i]f the payment of $1931.34 is paid as agreed, on or before September

18, 2001, the writ of eviction entered in this matter shall be permanently quashed." The landlord argues that the agreement also authorized it to file a new writ in the event that the tenant failed to pay the rent on time during the ensuing year.

■ As previously stated, "[w]e adhere to the 'objective law' of contracts, whereby the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, ... unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress or mutual mistake." *Capital City Mortgage Corp. v. Habana Vill. Art & Forklore, Inc.*, 747 A.2d 564, 567 (D.C.2000) (quoting *Minmar Builders, Inc. v. Beltway Excavators, Inc.*, 246 A.2d 784, 786 (D.C.1968) quoting *Slice v. Carozza Props., Inc.*, 215 Md. 357, 137 A.2d 687, 693 (1958)) (other citations omitted). We construe the contract as a whole, giving effect to each of its provisions, where possible. *Id.* at 569 (citing *1010 Potomac Assocs., supra*, 485 A.2d at 205–06); *Clyburn v. 1411 K St. Ltd. P'ship*, 628 A.2d 1015, 1018 (D.C.1993) (citation omitted).

■ Applying these general principles, we conclude that the provision of the agreement providing for the permanent quashing of the writ of restitution upon payment of $1931.34 by September 18, 2001, even if met, did not relieve the tenant of the remaining obligations he assumed under the agreement or deprive the landlord of any remedies to which it was entitled thereunder.[8] Here, the tenant also agreed to a "pay-on-time" provision for a period of one year in default of which the landlord would be entitled to judgment, and the tenant gave up the right to seek a further stay of execution of the judgment[9] or "to redeem any judgment."[10] These provisions in the parties' agreement must also be given effect. *See Clyburn, supra*, 628 A.2d at 1018 (stating that "[a] contract must be interpreted as a whole[,]" and effect given to language in the document limiting a guarantor's liability). While the tenant bargained for the permanent quashing of the initial writ, he also agreed to other terms that could result in the issuance of additional writs.

8. While there is no dispute that the tenant made the lump sum payment required under the agreement, the landlord disputes that the tenant made the payment timely. The record reflects that the tenant tendered a check in open court for the lump sum amount due on September 25, 2001, which was one week later than the time provided for in the agreement. The trial court permitted the late payment to be made and quashed the writ. In light of our disposition, we need not decide whether the tenant's failure to pay the sum due by the date set in the agreement foreclosed the permanent quashing of the agreement.

9. *See* Super. Ct. L & T R. 16(b) & (c) (2001) (setting forth the conditions and procedure for seeking a stay of execution of a writ of restitution).

10. Ordinarily, "a tenant may avoid forfeiture of a lease for nonpayment of rent upon tender to the landlord of all outstanding rent, with interest and costs, at any time prior to actual eviction." *Mullin v. N Street Follies Ltd.*

*P'ship*, 712 A.2d 487, 494 (D.C.1998) (citing *Gause v. C.T. Mgmt., Inc.*, 637 A.2d 434, 438 (D.C.1994), citing *Trans–Lux Radio City Corp., supra* note 3, 54 A.2d at 146). This equitable right of redemption is subject to exceptions. *See id.* at 495 (citing *Moore, supra*, 542 A.2d at 1253). In *Moore*, this court held essentially that a *Trans Lux* remedy could not modify the terms of a consent judgment requiring the tenant to vacate the property if she did not purchase it. *Id.* at 1255. The court reasoned that the original action for possession and back rent had been settled as set forth in a consent judgment and that to encourage this highly favored manner of settling civil controversies, such agreements "should not be modified in favor of either party, absent the most compelling reasons." *Id.* (citing *Autera v. Robinson*, 136 U.S.App.D.C. 216, 218, 419 F.2d 1197, 1199 (1969)). Similarly, in this case, the tenant's rights are controlled by the consent agreement.

*See* Super. Ct. L & T R. 16(a) & (d) (respectively covering the issuance of additional or alias writs of restitution and providing for time·limits and leave of court to obtain writs). Specifically, the tenant agreed to the one year pay-on-time provision, reserving remedies to the landlord for its breach, including "a waiver of his right to seek a stay or redeem any judgment entered based upon his failure to pay his rent timely as hereto agreed." Since the agreement contemplated that the landlord could secure and execute on its judgment if the tenant breached the pay-on-time provision, the stay provision for the initial writ could not foreclose the landlord's right to the issuance of a second writ upon a showing that the tenant breached the agreement.[11]

### III. Stay of Proceedings

#### A. *Need for a Drayton Stay*

■ The tenant and amicus argue that the trial court erred in failing to enter a stay of the proceeding while the tenant's petition challenging the rent increase was pending before the RACD.[12] They contend that the RACD had primary jurisdiction over the question of the legality of the rent increase, the non-payment of which formed the sole basis for the landlord's claim that the tenant had breached the terms of the consent judgment. Any other procedure, they contend, had the potential for resulting in the tenant's eviction solely because he failed to pay an illegal rent increase.

■ In support of their argument, the tenant and amicus rely upon this court's decision in *Drayton, supra,* 462 A.2d at 1115. In *Drayton,* this court held that "[a]pplication of the doctrine of primary jurisdiction requires that when there is pending before the Administrator or the [Rental Housing Commission] RHC a challenge to a rent increase that bears upon the amount of rent owed by a tenant defending a possessory action brought for

11. The tenant argues for the first time in his reply brief that his single breach of the consent order by failing to pay the challenged rent increase constitutes a compelling reason to disallow forfeiture of his tenancy. This issue was not raised in the landlord's brief, and therefore, the argument exceeds the permissible scope of a reply brief. *See* D.C.App. R. 28(c) (providing that "[t]he appellant may file a brief *in reply to the brief of the appellee.*") (emphasis added); *see also Joyner v. Jonathan Woodner Co.,* 479 A.2d 308, 312 n. 5 (D.C.1984) (holding that an issue advanced for the first time in a reply brief is not within the scope of Rule 28(c)) (citation omitted). Moreover, it does not appear that the tenant raised this issue in the trial court. Generally, issues not raised in the trial court will not be considered on appeal. *See Aurora Assocs., supra,* 750 A.2d at 1249 (citation omitted) (issues not raised in the trial court will be spurned on appeal). Even assuming the issue were properly before us, the tenant could not prevail on the present record. It is true that forfeitures are disfavored sanctions and will not be enforced absent circumstances making them "reasonably proper for the protection of

rights which would otherwise be impaired." *Shapiro v. Tauber,* 575 A.2d 297, 300 (D.C. 1990). In this case, however, the tenant expressly waived the right to seek equitable redemption if he violated certain terms of the agreement. He is bound by his contractual agreement, which is not subject to modification by the court for either party, "absent the most compelling reasons." *See Moore, supra,* 542 A.2d at 1255. Such reasons have not been developed in the record now before this court.

12. Amicus, the Legal Aid Society of the District of Columbia, represented that its interest in this litigation is the question concerning "whether the Landlord and Tenant Branch [of the Superior Court] may properly authorize a landlord to summarily enforce an illegal rent increase by a forthwith eviction notice before the propriety of the increase [can] be adjudicated by the Department of Consumer and Regulatory Affairs." The Legal Aid Society provides free legal services to qualifying low income residents, many of whom are involved in landlord-tenant disputes.

nonpayment of rent, the [Landlord & Tenant] Judge should stay the action to await the ruling of the Administrator or, if an appeal is taken to the RHC, then of that body."[13] *Id.* at 1120 (footnote omitted). In addition, the trial court should await the disposition of any appeal taken to this court from the agency's final decision. *Id.* at 1120 n. 2 (citing *Pennsylvania R.R. Co. v. United States,* 363 U.S. 202, 80 S.Ct. 1131, 4 L.Ed.2d 1165 (1960)). In *Drayton,* which involved a suit for possession for non-payment of rent, the tenants claimed in the trial court that the rent was not due in the amount claimed because rent increases taken by the landlord were illegal. *Id.* Although the tenant did not file a petition with the administrative agency challenging the rent increase before or after it went into effect, this court held that the trial court erred in determining the validity of the rent increases. *Id.* at 1120. We instructed that, in the exercise of its discretion, the trial court should have either given the tenants a reasonable time to file a challenge with the agency or assumed the validity of the increase absent such a challenge.[14] *Id.* at 1120–21. We reasoned that "it is inconsistent with the summary nature of [Landlord–Tenant] proceedings as well as the doctrine of primary jurisdiction to require that such matters be adjudicated in [the L & T] branch." *Id.* at 1120.

In this case, as previously stated, the parties' agreement did not preclude the tenant from filing a challenge to the legality of future rent increases. The tenant, in fact, filed a challenge with the agency shortly after the landlord moved to vacate the stay provided for in the settlement agreement based upon its claim that the tenant had failed to pay the full amount of the rent. The tenant brought to the trial court's attention that his challenge to the increase was pending before the agency. While acknowledging that the tenant was "entitled to pursue [his] petition to challenge the rent before [the] RACD," the trial court declined to stay the proceeding, thereby allowing the landlord to evict the tenant for failure to pay the challenged rental increase. Since the tenant had tendered all of the rent due except for the challenged increase, whether the tenant was in violation of the pay-on-time provision of the consent judgment depended upon the legality of the increase charged by the landlord.[15] Amicus, joined by the tenant, argues that, under these circumstances, under *Drayton,* the trial court had no authority to grant the landlord's motion to set aside the stay and to authorize the eviction to proceed. "The *Drayton* proscription against judicial determination of rent increases seeks to prevent the courts from intruding unduly into the province of

---

13. "Under the doctrine of primary jurisdiction, when a claim is originally cognizable in the courts but requires resolution of an issue within the special competence of an administrative agency, the party must first resort to the agency, before he or she may sue for an adjudication." *Drayton, supra,* 462 A.2d at 1118 (citing 2 AM. JUR. 2d *Administrative Law,* § 788 (1962)).

14. If the tenant prevails subsequently at the agency, the agency has authority to order a refund and to impose other sanctions for the landlord's collection of illegal rents. *See Kapusta, supra,* 704 A.2d at 287 (citing D.C.Code

§ 45–2529 (1996)) (quoting statute setting forth penalties for demanding or receiving rent in excess of maximum allowable by law.)

15. The tenant, who was proceeding *pro se* at the time, represented to the trial court: that his rental payment had been returned; that his rent was higher than tenants who took occupancy after he did; that certain housing problems persisted in the unit; that a violation notice had been issued by an inspector; and that he had filed a petition challenging the rent increase with the Rental Accommodations Commission.

the Rental Housing Commission, whose primary authority flows directly from the rent control laws." *Mullin, supra* note 10, 712 A.2d at 493. We agree that the principles enunciated in *Drayton* apply to this situation.

In *Drayton*, we said that the procedure outlined "should be followed in all actions in the L & T Branch, in which the legality of rent increases is raised...." 462 A.2d at 1121 n. 12. That the question of the legality of the rent increase here arose in a context different from the *Drayton* case does not alter the result. The circumstances are analogous, and we see no basis to distinguish the two situations. Here, as in *Drayton*, the landlord's right to possession of the property depended ultimately upon the legality of the rental increase it demanded. The tenant tendered the amount due under the consent agreement with the exception of the challenged increase. If the landlord could not lawfully demand the increase, then it could not claim that the tenant breached the agreement by refusal to pay it. Thus, the tenant's pending petition challenging the legality of the rent increase bore directly upon the issue before the court, *i.e.*, whether the tenant breached the consent judgment by withholding the amount of the increase demanded by the landlord. The only way to conclude that the tenant was in breach of the agreement was for the court to find that the tenant was obligated to pay the increased amount. Thus, without expressly finding that the tenant had failed to pay the lawful rent for the unit, the court's ruling effectively did so. Absent a stay, the eviction remedy was authorized to proceed before the agency could determine the legality of the rental increase that formed the basis for the claim of breach. Thus, the court's action on the landlord's motion would terminate finally the tenant's right to possession. Such a procedure would defeat primary jurisdiction of the agency to determine the validity of the rent increase and render meaningless the tenant's right to challenge the increase before the agency. While a refund or damages might compensate the tenant for his financial losses, actual eviction from his home for what may be determined to be illegal charges is essentially irreparable. This is the type of final action to which the *Drayton* proscription against judicial determinations applies. *See Mullin, supra*, 712 A.2d at 493–94.[16]

Although the trial court viewed its ruling setting aside the stay as leaving open for future determination by the agency the

**16.** This case is distinguishable from *Mullin*. In *Mullin*, a suit for possession for non-payment of rent, the parties consented to a protective order requiring the tenant to pay the undisputed amount of rent into the Registry of the Court *pendente lite*. 712 A.2d at 489. Subsequently, the trial court entered a *Drayton* stay, deferring to the agency to resolve the parties' dispute over the proper rent amount. *Id.* The Rent Administrator approved a rent increase, and the tenant appealed to the Rental Housing Commission (RHC) that, in turn, conditioned a stay on the tenant's filing of a supersedeas bond or establishment of an escrow account covering the increase. *Id.* The tenant did not secure a stay, and the trial court increased the protective order amount to the level approved by the Rent Administrator. *Id.* When the tenant failed to comply with the modified protective order, the court struck his pleadings and entered judgment for the landlord. *Id.* On appeal, this court found no violation of the *Drayton* principle. *Id.* This court reasoned that a protective order is an interim, equitable measure intended to preserve the status quo *pendente lite*, as opposed to a final determination of the merits of the case to which *Drayton* applies. *Id.* at 493. Unlike *Mullin*, in this case, we deal not with an interim remedy, but rather with a final determination of whether the tenant breached the agreement by withholding the disputed amount. Moreover, at the time that the court authorized eviction to proceed, the agency had not acted on the tenant's challenge.

question of the legality of the rental increase, the practical effect of its ruling was to assume the validity of the increase. Otherwise, there was no basis for concluding that the tenant was in breach of the agreement for withholding the increase. Therefore, where, as here, the determination of whether a breach has occurred rests solely upon the legality of the rent charged, the rule from *Drayton* is implicated, and the court should refrain from ruling thereon. The proper course for the trial court, under the circumstances, was to impose a stay under *Drayton*.[17] As amicus points out, the court's failure to enter a *Drayton* stay, subjects the tenant to eviction solely for failure to pay the challenged increase, the validity of which remains under consideration by the agency. While the tenant is protected from eviction as long as the stay pending appeal is in effect, upon final disposition of the present appeal, unless the tenant prevails, the landlord has the potential to evict him based on what the agency may determine finally was an illegal rental charge. Thus, the *Drayton* stay is the appropriate course where, as here, the tenant has filed a challenge with the agency having primary jurisdiction of an issue that is outcome determinative of the litigation before this court.

The case must be remanded for entry of a stay under *Drayton* and for consideration of the impact of the final agency order, when entered, on the landlord's claim that the tenant breached the agreement. The tenant and amicus argue that any protective order payment entered in connection with the *Drayton* stay should not include the contested portion of the rent. They contend that forcing the ten-

ant to pay the higher rent pending the outcome of the administrative challenge to its legality would defeat the purpose of *Drayton* and the rent control statute.

■■■ "The *Drayton* proscription against judicial determination of rent increases seeks to prevent the courts from intruding unduly into the province of the Rental Housing Commission, whose primary authority flows directly from the rent control laws." *Mullin, supra* note 10, 712 A.2d at 493 (citations omitted). Its purpose is to promote the policy of "greater uniformity of result and the utilization of the specialized and expert knowledge of the agency." *Id.* at 492 (citing *District of Columbia v. Thompson*, 570 A.2d 277, 287 (D.C.1990)). To that end, it operates to leave to the agency, not the court, the adjudication of the legality of a rent increase. *See id.* at 492. A protective order is an equitable remedy that the courts have devised "to ensure that the landlord is not exposed to a prolonged period of litigation without rental income while the tenant remains *in possession [of the property] pending the outcome of a suit for possession.*" *Id.* at 493 (quoting *R & A, Inc. v. Kozy Korner, Inc.*, 672 A.2d 1062, 1071 (D.C.1996) (quoting *Davis v. Rental Assocs., Inc.*, 456 A.2d 820, 823 (D.C.1983) (en banc)) (internal quotation marks omitted) (emphasis added)). Such orders are intended to preserve the status quo until the merits determination, with the view toward "maintain[ing] the proper balance, *pendente lite*, in the unique arena of landlord-tenant litigation." *Id.* (quoting *Davis*, 456 A.2d at 829 (other citation omitted)). Thus, in *Mullin*, this court held that modification of a protective order to reflect a

---

**17.** We are not persuaded that the tenant waived his right to a stay under *Drayton*. A waiver is a "voluntary relinquishment of a *known* right . . . ." *Gibson v. District of Columbia*, 221 A.2d 715, 717 (D.C.1966). There is nothing in the consent judgment to suggest that the tenant was waiving his right to challenge future rent increases or the stay that is available when such a challenge is made.

rental increase not yet finally approved by the Rental Housing Commission is not an adjudication of the merits of the rent increase under *Drayton*. *Id.* at 492. Therefore, a protective order that includes the disputed rental increase does not interfere with the agency's primary role that is protected by the *Drayton* rule. *See id.* at 493.

The tenant argues that the court can preserve the status quo during the *Drayton* stay only by setting the protective order in the undisputed amount rather than at the increased rent level. However, he acknowledges that the court must make its decision in this regard on a case-by-case basis, considering various relevant factors. In *Bell v. Tsintolas Realty Co.*, 139 U.S.App.D.C. 101, 430 F.2d 474 (1970), recognized as the seminal case allowing protective orders,[18] the court identified among the factors for consideration: "the amount of rent alleged to be due, the number of months the landlord has not received even a partial rental payment, the reasonableness of the rent for the premises, the amount of the landlord's monthly obligations for the premises, whether the tenant has been allowed to proceed *in forma pauperis*, ... whether the landlord faces a substantial threat of foreclosure[,]" and the landlord's need for the order and the merits of the tenant's asserted defenses. 139 U.S.App.D.C. at 111, 430 F.2d at 484. While *Bell* involved suits for possession for non-payment of rent and tenants' defenses of housing code violations, rather than a suit that had reached the consent judgment stage with a disputed contractual issue, some of the same considerations are relevant to the protective order amount for a *Drayton* stay. *See Stets v. Featherstone*, 754 A.2d 292, 297 (D.C.2000)

(holding that the trial court erred in setting the terms of a new protective order under *Drayton*, in part, because it "failed to inquire into either the merits of the tenant's claims of rent ceiling and housing code violations or the exigencies confronting the landlord.") (footnote omitted). However, *Bell* is instructive in suggesting "that the preferable course is to leave the decision on a case-by-base basis to the discretion of the trial judge." *Bell*, 139 U.S.App.D.C. at 110, 430 F.2d at 483; *see also Stets*, 754 A.2d at 296 (observing that "a protective order is an equitable device requiring the exercise of sound discretion on a case-by-case basis.") (citation and internal quotation marks omitted). In light of these considerations, we decline to adopt a rigid rule that would limit the protective order amount to the undisputed amount of the rent.

■ Moreover, it is not uncommon for protective orders to require the tenant to deposit disputed rental payments into the registry of the court. *Stets, supra*, 754 A.2d at 295. The protective order does not dispose finally of the parties' rights to the money paid under it. *Id.* at 296. The court cannot disburse the funds until conclusion of the action and a determination of the parties's respective rights to the funds. *Id.* (citing *McNeal v. Habib*, 346 A.2d 508, 514 (D.C.1975)) (other citation omitted). While the court has discretion to order release of the uncontested portion of the rent to the landlord under some circumstances, we can conceive of no circumstances where the disputed portion of the rent will be released before it is determined to whom it rightfully belongs. *Id.* at 296–97. Such an order protects the landlord from financial losses when the tenant continues in possession pending the

---

**18.** *See Serafin v. 1458 Columbia Rd., N.W. Tenant Ass'n.*, 592 A.2d 1063, 1065 (D.C. 1991).

outcome of the litigation, and "[i]t also protects tenants successful in their litigation from forfeiting their lease at the conclusion of the litigation because they cannot make up for an unpaid deficiency." *Id.* at 295 (quoting *Dameron v. Capitol House Assocs. Ltd. P'ship,* 431 A.2d 580, 584 (D.C.1981) (*rev'd on unrelated grounds*) (other citation omitted)). Therefore, we leave it to the trial court to set the *Drayton* stay protective order amount at a level, which in its discretion, is warranted by the circumstances, considering all relevant factors.

## B. *The Landlord's Challenge to the Stay Pending Appeal*

■ The landlord argues that the trial court erred in granting the tenant a stay pending appeal because he failed to meet the criteria for that relief.[19] Specifically, he contends that the tenant failed to show that he would be irreparably harmed if the stay were not granted, that the landlord would not suffer harm or that the public interest would be served by granting the stay. "To prevail on a motion for stay, a movant must show that he or she is likely to succeed on the merits, that irreparable injury will result if the stay is denied, that opposing parties will not be harmed by a stay, and that the public interest favors the granting of a stay." *Barry v. Washington Post Co.,* 529 A.2d 319, 320–21 (D.C.1987) (citing *In re Antioch Univ.,* 418 A.2d 105, 109 (D.C.1980)) (other citation omitted). Applying that standard, we find no abuse of discretion in the trial court's ruling granting the stay pending appeal.

■ The most important inquiry in the injunction analysis concerns irreparable injury. *Antioch, supra,* 418 A.2d at 109. The parties do not dispute that the tenant would suffer irreparable harm if evicted. Other courts have so determined. *See, e.g., Higbee v. Starr,* 698 F.2d 945, 947 (8th Cir.1983) (depriving tenant of place to live constituted irreparable harm); *Vargas v. Municipal Court for Riverside Judicial Dist.,* 22 Cal.3d 902, 150 Cal.Rptr. 918, 587 P.2d 714, 722 n. 7 (1978) (noting that eviction inevitably results in irreparable harm); *Housing Works, Inc. v. City of New York,* 255 A.D.2d 209, 680 N.Y.S.2d 487, 491 (N.Y.App.Div.1998) (noting that potential of eviction for non-payment of rent presented irreparable harm). However, the landlord argues that the tenant has provided no proof that he could not pay the rent increase and that he would be homeless. We disagree. Here, the tenant's failure to tender the full amount of the rent charged placed him in breach of an agreement, subject only to his pending challenge to the legality of the rent. Absent a stay, he could have been evicted under the terms of an agreement that provided that he had no right to redeem the tenancy, even if he could afford to pay the charges subsequently. The upheaval of the tenant from his home, even if he can find alternative housing, creates a cognizable irreparable injury.

■ This court has previously indicated that a party seeking temporary equita-

---

**19.** The landlord also asserts, without further argument, that the trial court (Judge Mize) erred in overruling Judge Blackburne–Rigsby's ruling that a *Drayton* stay was not applicable. In light of our determination that Judge Blackburne–Rigsby erred in failing to enter a *Drayton* stay, we need not address the landlord's law of the case argument. *See*

*Guilford Transp. Indus. v. Wilner,* 760 A.2d 580, 593 (D.C.2000) (quoting *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)) ("the law of the case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.' ")

ble relief need not show a "mathematical probability of success on the merits." *See Antioch, supra,* 418 A.2d at 110 (citations omitted). Rather, the level of probability of success that must be demonstrated will vary according to the court's assessment of the other factors pertinent to the analysis. *See id.* (citation omitted). Thus, "[a] stay may be granted with either a high probability of success and some injury, or *vice versa." Cuomo v. United States Nuclear Regulatory Comm'n,* 772 F.2d 972, 974 (D.C.Cir.1985); *see also Antioch,* 418 A.2d at 110–11 (suggesting that more stringent "probable success" on the merits standard had to be employed because movant had failed to show irreparable harm by clear and convincing evidence). Thus, if irreparable harm is clearly shown, the movant may prevail by demonstrating that he or she has a "substantial case on the merits." *See Antioch, supra,* 418 A.2d at 110–11.

On the merits, as discussed earlier in this opinion, the tenant had a clear likelihood of prevailing on his claim that he was entitled to a *Drayton* stay pending the final determination of his challenge to the rental increase administratively. Moreover, the tenant raised somewhat novel issues, or at least issues not previously squarely addressed by this court. These include: (1) whether under the unique circumstances of this case, a *Drayton* stay was required; (2) how the word "rent" should be interpreted in a consent judgment where it is not defined therein; and (3) whether allowing rent increases to be incorporated into a consent judgment constitutes an impermissible judicial modification of the consent judgment. These are circumstances that can be weighed in the analysis. *See Doe v. Axelrod,* 136 A.D.2d 410, 527 N.Y.S.2d 385, 390 (1988) (noting that although movant may not be ultimately successful, the case presented "novel issues of first impression" and injunction should be granted).

Further, there was no showing that the landlord would be harmed here. The landlord could be protected by an appropriate order. In this case, the tenant was directed to pay the full amount of rent demanded by the landlord pending appeal. Since the landlord would be protected from loss of income, its only harm would be the delay in executing the writ of eviction. Although this is a valid interest, when the equities are balanced, the landlord's interest in timely execution pales in comparison to the tenant's potential loss of his home before his rights could be adjudiciated.

Finally, the public interest is better served by preserving the tenant's right to occupy his home pending a determination of the legality of the rent charged. The landlord is correct that there is a public interest in preserving contracts as written. Indeed, this court has indicated that although there was a strong interest against forfeiture, it might be slightly outweighed by the interest in contract preservation. *See Suitland Parkway Overlook Tenants Ass'n. v. Cooper,* 616 A.2d 346, 349 (D.C. 1992). However, a temporary stay does not defeat the landlord's rights under the contract. Further, as the trial court recognized, other important policies are implicated here, *i.e.,* the policies protected by *Drayton* of deferring to the agency with primary jurisdiction of the legality of rent challenges under our local statutes and preserving the status quo pending the agency's determination of such questions. *See Mullin, supra* note 10, 712 A.2d at 492–93 (citations omitted). As Judge Mize implicitly found, given the uncertainty regarding how *Drayton* would apply in this instance, the public interest would be better served by determination of what he called "a significant legal issue." In this case, the tenant has the more compelling public interest argument. For the foregoing reasons, we find no abuse of discretion

in the trial court's decision entering a stay pending appeal.

## Conclusion

For the reasons stated herein, we affirm the decision of the trial court in the landlord's cross appeal, case no. 02–CV–141. In the tenant's appeal, case no. 02–CV–291, we affirm, in part, the trial court's decision as set forth in this opinion. However, we reverse and remand the trial court's decision on the *Drayton* stay issue and for further proceedings consistent with this opinion, including the impact of any final decision of the administrative agency.

*So ordered.*