N.P.P. CONTRACTORS, INC., Appellant,

v.

JOHN CANNING & COMPANY,
Appellee.

No. 96–CV–794.

District of Columbia Court of Appeals.

Argued Dec. 12, 1997.
Decided Aug. 6, 1998.

---

Richard S. Schrager, for appellant.

Edward C. Bacon, Annapolis, MD, for appellee.

Before STEADMAN, FARRELL, and RUIZ, Associate Judges.

RUIZ, Associate Judge.

In this appeal, a general contractor asserts that it is entitled, by contract, to indemnification from its subcontractor even if the general contractor's negligence caused the damages for which indemnification is sought. The trial court entered a directed verdict against the claim for indemnification, explaining that "the contract does not unambiguously provide that [the subcontractor indemnitor] will indemnify [the general contractor indemnitee] for the contractor's own negligence." Based on controlling precedent, we conclude that the indemnification clause in the contract is not ambiguous on the broad scope of the indemnification provision, and therefore reverse and remand.

## I.

### The Accident

Dorothea McColl, an employee of John Canning & Company (Canning), sued N.P.P.

Contractors, Inc. (N.P.P.) in a tort action for personal injuries and related damages she sustained while working on a renovation project in which Canning was a subcontractor.[1] N.P.P., the general contractor, in turn filed a third-party complaint against Canning for indemnification based upon a clause in their contract. The jury in the primary trial found that N.P.P.'s negligence in erecting, maintaining and/or inspecting the scaffolding was a proximate cause of McColl's injuries, and awarded McColl $413,000 in damages for her personal injuries and McColl's husband $5,000 in damages for loss of consortium.

### The Contract and the Indemnification Clause

The indemnification clause at issue, labeled "Liability and Indemnity Insurance," reads in relevant part as follows:

> The Subcontractor [Canning] shall indemnify and save harmless the Contractor [N.P.P.] and Owner from any and all claims and liabilities for property damage and personal injury, including death, arising out of or resulting from or in connection with the execution of the work.

When entering into the agreement, Canning altered and initialed six different clauses in the contract, which had been drafted by N.P.P. The Liability and Indemnity Insurance clause was not among them.[2]

### The Directed Verdict

While the jury was deliberating in the primary case, the trial court entered a directed verdict for Canning stating:

> I think that the contractual clause is ambiguous, and as such under the case law, including *Rivers and Bryan versus HBE Corporation*,[3] I am ruling in favor of Can-

---

1. McColl was working for Canning, doing decorative painting on a wall near the ceiling of a room while standing on scaffolding which was provided by N.P.P. McColl stepped back to look at her work and partially fell through a gap on the surface of the scaffolding.

2. In contrast, Paragraph 17 of the contract, entitled "Damages for Delay," was one of the contract provisions altered and initialed by Canning. As drafted by N.P.P., the paragraph's concluding sentence read: "Subcontractor is responsible for any and all [delay] damages caused to Contractor." The sentence was amended by Canning to read: "Subcontractor is responsible for any and all damages caused to Contractor, *arising out of its [subcontractor's] errors or omissions*." (Emphasis added to highlight Canning's amendment.)

3. *Rivers & Bryan, Inc. v. HBE Corp.*, 628 A.2d 631 (D.C.1993).

ning and Company because it does not— the contract does not unambiguously provide that Canning Company, the subcontractor, will indemnify the contract [sic] N.P.P. for the contractor's own negligence.

In rejecting N.P.P.'s argument that the contract language unambiguously provided for full indemnification, the trial court referred to "testimony [by N.P.P.'s president] that he interpreted [the indemnification clause] as only providing indemnification of work done by ... Canning's negligence."[4]

## II.

 "In reviewing the grant or denial of a motion for directed verdict, this court, like the trial court, must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party." *Washington Metro. Area Transit Auth. v. Bell,* 632 A.2d 414, 415 (D.C.1993). Where, as here, the case is tried without a jury, "the court may review both as to the facts and the law, but the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." D.C.Code § 17–305 (1997). Whether or not a contract is ambiguous is a question of law, which this court considers *de novo. See American Bldg. Maintenance Co. v. L'Enfant Plaza Properties, Inc.,* 655 A.2d 858, 861 (D.C. 1995).

4. At trial, N.P.P.'s president, Angel Almaraz, was cross-examined about his interpretation of the indemnification clause of the contract:

> Q. [ ] And did you understand, Mr. Almarez [sic], that [Canning] was going to indemnify N.P.P. for damages that would be caused to N.P.P. as a result of the execution of the work of [Canning]?
> [Objection by Counsel for N.P.P.]
> A. I didn't understand it that way. I understand it in the way it's put in the contract.
> []
> Q. Well, did you understand by writing that contract, is it your interpretation of that contract that [Canning] would indemnify N.P.P. if N.P.P. sustained some damage because of work that was done by Page Restoration Company [another contractor on the job]?
> [Objection by Counsel for N.P.P.]
> A. No, but Page Restoration Company by [Canning].
> []

This court has recently decided two cases which summarize and clarify the rule of interpretation we apply to claims for indemnification, based on contract, of a negligent general contractor against a non-negligent subcontractor, *W.M. Schlosser Co. v. Maryland Drywall Co.,* 673 A.2d 647 (D.C.1996), and *Grunley Construction Co. v. Conway Corp.,* 676 A.2d 477 (D.C.1996).[5]

In *Schlosser* this court recognized that

> [a]n indemnity provision ... "should not be construed to permit an indemnitee to recover for his [or her] own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties." If a party "expects to shift responsibility for its negligence ... the mutual intention of the parties to this effect should appear with clarity from the face of the contract."

673 A.2d at 653 (quoting *United States v. Seckinger,* 397 U.S. 203, 211–12, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970)); *see also Rivers & Bryan, supra,* 628 A.2d at 635. This court then declared that it was

> satisfied that the language of the contract[6] is sufficiently clear that [the subcontractor] is responsible not only for its own negligence, but that its liability also "stretche[s] to encompass [the contractor's] negligence as well."

> Q. [ ] So you understood that it was indemnifying N.P.P. for damages of N.P.P. caused by the work of [Canning] correct?
> A. Correct.

5. These cases were decided after the trial court's ruling before us.

6. In *Schlosser,* the indemnification clause interpreted by this court varied only slightly from the clause in dispute in this case:

> The subcontractor shall *promptly* indemnify and save *and hold* harmless the *General* Contractor and *the* Owner from any and all claims, [and] liabilities *and expenses* for property damage *or* [and] personal injury; including death, arising out of or resulting from or in connection with the execution of the work *provided for in this Agreement.*

673 A.2d at 653 (words *not* included in the N.P.P.–Canning contract are italicized; words included *only* in the N.P.P.–Canning contract are bracketed).

*Schlosser, supra,* 673 A.2d at 653 (quoting *Seckinger, supra,* 397 U.S. at 213, 90 S.Ct. 880).

Highlighting the contract language in which the subcontractor agreed to indemnify the contractor for "any and all claims . . . arising out of . . . or in connection with the execution of the work," this court in *Schlosser* concluded that

> [t]he language of th[e] contract, from the viewpoint of the parties at the time the contract was made, is "so broad and sweeping as to plainly reveal an intent to encompass losses incurred in whole or in part by the negligence of the indemnitee."

*Schlosser, supra,* 673 A.2d at 653 (quoting *Moses–Ecco Co. v. Roscoe–Ajax Corp.,* 115 U.S.App. D.C. 366, 369, 320 F.2d 685, 688 (1963)).[7] The opinion in *Schlosser* pointed to *Princemont Construction Corp. v. Baltimore & Ohio R.R. Co.,* 131 A.2d 877 (D.C.1957), a case in which this court interpreted a similarly-worded indemnification clause, and concluded that

> when the terms of an indemnity agreement are so broad and comprehensive, "the presumption is that if the parties had intended some limitation of the all-embracing language, they would have expressed such limitation."

*Schlosser, supra,* 673 A.2d at 654 (quoting *Princemont, supra,* 131 A.2d at 878).

*Schlosser* was closely followed by *Grunley, supra,* which involved an indemnification clause worded *exactly* the same as the clause found in the N.P.P.–Canning contract. *Compare Grunley, supra,* 676 A.2d at 478, *with* note 6, *supra.* This court in *Grunley* concluded that the indemnification agreement signed by the parties in that case was "substantially identical" to the contract language in *Schlosser,* and that it was thus bound to hold that the agreement "was sufficiently

comprehensive . . . to include indemnification for damages resulting from the negligence of [the indemnitee]."[8] *Grunley, supra,* 676 A.2d at 478.

▮ In light of this precedent, we are constrained to conclude that the indemnification language before us in this appeal also is unambiguous and enforceable. We are unpersuaded by Canning's invitation to distinguish this case from the cases analyzed above because Canning was an "innocent indemnitor." As we have previously held, the indemnification clause agreed to by Canning is "so broad and sweeping" that it covers damages "incurred *in whole or in part* by the negligence of the indemnitee." *Schlosser, supra,* 673 A.2d at 653 (quoting *Moses–Ecco, supra,* 115 U.S.App. D.C. at 369, 320 F.2d at 688). We also note, in particular, that Canning did not attempt to amend the contract to limit to its own negligence its liability for indemnification for personal and property damages, were that its intent, as it did in connection with delay damages. See note 2, *supra.*

Because the contract language is unambiguous, we do not consider the testimony of N.P.P.'s president Almaraz concerning his subjective intent as to the scope of the indemnification clause. *See 1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.,* 485 A.2d 199, 205 (D.C.1984) ("If the document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent. Extrinsic evidence of the parties' subjective intent may be resorted to only if the document is ambiguous.") (citation omitted). Thus, even if Almaraz's testimony were taken to mean that he "admitted" that his subjective intent coincided with Canning's interpretation that damages resulting from N.P.P.'s negligence would not be covered by the indemnification clause, it is irrelevant.[9] We do not read his

---

7. *Moses–Ecco* is a decision binding on this court. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971).

8. Two members of the panel concurred, stating that

> this panel is compelled to reach the result it does because of *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971). Were we free to do so, I would

> reach a different result on the record before us. . . .

*Grunley, supra,* 676 A.2d at 478 (Reid, J., concurring).

9. In this regard, the issue is not whether the statement is against the interest of a party and therefore would be admissible as an exception to the hearsay rule. Almaraz's testimony is not hearsay.

testimony, in any event, to constitute such an admission.[10]

As a matter of law, therefore, under the contract language before us, N.P.P. is enti- tled to indemnification from Canning for N.P.P.'s liability to McColl.

*Reversed and Remanded.*

10. Almaraz's testimony is confused and, at times, relates to an irrelevant point, the liability of Canning for the negligent work of Page Restoration Company, another subcontractor. At most, Almaraz's testimony can be summarized as indicating that Canning would be liable to N.P.P. for the negligence of Canning and not for the negli- gence of another subcontractor; his testimony is silent, however, on the question before us, whether Canning would or would not be liable for damages resulting from N.P.P.'s negligence.