**STEELE FOUNDATIONS, INC.,**
Appellant/Cross–Appellee,

v.

**CLARK CONSTRUCTION GROUP,**
INC., Appellee/Cross–
Appellant.

Nos. 04–CV–555, 04–CV–756.

District of Columbia Court of Appeals.

Argued Dec. 6, 2005.
Decided Dec. 13, 2007.

Warren D. Stephens, Lanham, MD, for appellant/cross-appellee.

Steven T. Cain, for appellee/cross-appellant.

Before WASHINGTON, Chief Judge, RUIZ, Associate Judge, and KERN, Senior Judge.

RUIZ, Associate Judge:

This case involves cross-claims for indemnification between a contractor, appellee/cross-appellant, Clark Construction Group, Inc. (Clark), and its subcontractor, appellant/cross-appellee, Steele Foundations, Inc. (Steele). Both parties were sued by a worker injured on their construction site, and both settled the worker's claim before suing each other in the instant suit for indemnification. Clark's cross-claim, at issue on appeal,[1] is based on an indemnification clause in the parties' construction contract. The trial court found, as a matter of law, that under a provision of the indemnification clause, Steele was required to indemnify Clark for the amount of the settlement it reached with the injured worker and for the attorneys' fees incurred in responding to the worker's claim, notwithstanding the jury's verdict that Clark was not entitled to indemnification under a different provision of the indemnification clause. Steele appeals the trial court's determination that it is contractually bound to indemnify Clark. In a cross-appeal, Clark challenges the trial court's denial of its motion for judgment as a matter of law on the theory that the jury's verdict was inconsistent with the findings it made on the interrogatories on the verdict form. We affirm.[2]

---

1. Steele has not appealed the denial of its claim for indemnification.

2. Given our disposition of Steele's appeal, we need not reach Clark's claim that the jury's verdict was inconsistent with its findings in

## I.

Clark was the general contractor responsible for the construction of the Connecticut Park Apartments at 4411 Connecticut Ave., NW. Steele was the subcontractor on the project tasked with "lagging," or reinforcing, the excavation site. The injured worker, Mr. Inez Berrios, was employed by another subcontractor, and in his complaint he alleged that both his employer and a representative of Clark had told him, on the day he was injured, to help Steele excavate a trench along a wall of new excavation, which Steele was charged with reinforcing so it would not collapse. The wall did collapse, causing the worker serious injury and paralysis. Mr. Berrios sued his employer, Steele, Clark, and the owner of the property. All parties settled with Mr. Berrios. The present action between Steele and Clark went to trial on cross-claims for indemnification for their respective settlements with Mr. Berrios and associated attorneys' fees.

At the core of the parties' dispute on appeal are the first two sentences in the indemnification clause, section 6(c) of the "Subcontract Agreement" between Steele and Clark. This section reads:

> If any person (including employees of Subcontractor [Steele]) suffers injury or death or any property is damaged, lost or destroyed, as a result, in whole or in part, of Subcontractor's acts or omissions, whether or not involving negligence of Subcontractor, his employees, agents or lower-tier subcontractors, Subcontractor assumes the liability therefor and shall indemnify and hold harmless therefrom the Owner and Clark and their agents, servants, employees and sureties. With respect to any action involving Subcontractor's acts or omissions, (I) Subcontractor shall at its own expense defend Clark and all other indemnified parties, and (ii) Subcontractor shall pay all costs and expenses, including attorneys' fees, of, and satisfy all judgments entered against, Clark and all other indemnified parties. Nothing herein shall preclude Clark from participating in any such defense. Subcontractor's assumption of liability herein is in addition to assumption of all liabilities on account of or in any way related to Subcontractor's work which Clark has assumed under the Contract Documents or under agreements with third parties who may be affected by construction of the Project.[3]

The parties agreed before trial that the first sentence of the indemnification clause required Steele (the subcontractor) to indemnify Clark (the contractor) only if there was a finding that Mr. Berrios's injuries *resulted* from an act or omission of Steele, and that the jury should decide that question. Therefore, causation was the primary focus of the trial. The meaning of the second sentence, on the other hand, was hotly contested, and the parties agreed that its interpretation was a question of law to be decided by the judge after the jury rendered its verdict.

*The Trial and Post–Trial Proceedings Regarding the First Sentence of the Indemnity Clause*

At trial, Clark called Douglas Verden as a witness. Verden was the superintendent for Clark on the job site at the time of the accident. Verden testified that on Monday morning, February 1, 1999, the day before the accident, he had expected Steele's crew

---

response to the interrogatories on the verdict form. *See* Super. Ct. Civ. R. 49(b), note 4, *infra*.

**3.** According to the parties, this indemnification clause is a standard provision used in form construction contracts.

to be at the work site, since he had told Steele's foreman, Mr. Hudler, the previous Friday that they would be needed that morning. Verden's crew worked over the weekend to excavate the site so it would be prepared for lagging by the Steele crew on Monday. However, Steele's crew did not show up as expected. When Verden complained about the crew's absence, Hudler told him that all of Steele's crews were busy that day, but that Verden should not be too concerned about the area the Steele crew was supposed to have lagged that day, since it was mostly rock and "it wasn't going to move." The following day, Tuesday, February 2, Steele's crew arrived, but did not begin the lagging work because it was raining. Later, Verden (on behalf of Clark) and a representative of Mr. Berrios's employer, Miller and Long, instructed Mr. Berrios to go to that area and shovel out some debris. While he was doing so, a portion of the wall of the excavated site collapsed, causing serious injury to Mr. Berrios.

Hudler, Steele's foreman, had been working for Steele for twenty-eight years.

He testified that Verden did not tell him on Friday to come with a crew on Monday morning, February 1, 1999. Nevertheless, Hudler had gone by the worksite at about 5:30 or 6:00 a.m. that Monday morning on his own initiative to check whether the area was ready for lagging, and noticed that it was not, because it had not been "dug out." According to Hudler, he never spoke with Verden that day, and Verden was not at the worksite while Hudler was there. Hudler disputed that he told Verden not to worry about the lagging because the area was mostly rock and "it wasn't going anywhere." Hudler testified that the next day, when Mr. Berrios was injured, he was on his way to Florida on vacation.

The jury was instructed that it was "being asked to determine Clark's claim that it is entitled to indemnification from Steele under" the first sentence of the indemnification clause. On the special verdict form, a general verdict form with interrogatories pursuant to Superior Court Civil Rule 49(b),[4] the jury was asked to answer two

---

4. Rule 49. Special verdicts and interrogatories.

    (a) *Special verdicts.* The Court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the Court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The Court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the Court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the Court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

    (b) *General verdict accompanied by answer to interrogatories.* The Court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon 1 or more issues of fact the decision of which is necessary to a verdict. The Court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the Court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When the answers are consistent with each other but 1 or more is inconsistent with the general verdict, judgment may be entered

factual questions prior to rendering its verdict on the indemnification issue:

1. Did Clark ask Steele to have a crew at the job site on Monday, February 1?

2. Did Hudler tell Verden "it is not going anywhere," or words to that effect?

3. Is Clark entitled to indemnification from Steele?

A space for checking "yes" or "no" was provided under each question. These first two questions mirror the stipulation of the parties that the "only factual disputes" in the case were "(1) whether or not Clark asked Steele to have a crew at the job site on Monday; and (2) whether or not someone on Steele's behalf told Verden that the wall wasn't going anywhere or words to that effect."

The jury returned a verdict that answered "yes" to the two factual questions (Clark did ask Steele to have a crew ready on Monday; and Steele (through Hudler) assured Clark (through Verden) about the safety of the excavation site), but "no" to the ultimate question of whether Clark was entitled to indemnification from Steele. After trial, Clark moved for judgment as a matter of law, notwithstanding the verdict. At a hearing on this motion, Clark argued that the jury's verdict was inconsistent with its answers to the factual interrogatories, and, therefore, pursuant to Superior Court of Civil Procedure 49(b), see note 4, *supra,* the verdict should be overturned. The judge ruled otherwise, concluding that the jury's verdict was supported by its answers to the interrogatories, and denied Clark's motion for judg-

ment as a matter of law on that issue. Clark, on cross-appeal, challenges this determination.

*Proceedings Regarding the Second Sentence of the Indemnity Clause*

As to the meaning of the second sentence of the indemnity clause, Steele argued to the trial court, as it does here, that the clause does not apply, and that it is not required to indemnify Clark, unless there was a determination under the first sentence that the injuries actually resulted from its acts or omissions. Clark's position is that as long as any action brought against it and Steele *alleged* that Steele's acts or omissions were the cause of injury, Steele was required to defend Clark, pay costs and expenses (including attorney's fees), and satisfy all judgments against it. In other words, that a finding of legal responsibility on the part of Steele on the merits of the action is not a necessary precondition to Steele's obligation to indemnify Clark. In addition, Clark interprets the language in the clause requiring Steele to "satisfy all judgments entered against it" as requiring Steele to reimburse it for the costs of its settlement with Mr. Berrios, even if the claim did not proceed to trial and final judgment. Steele contends that it should not be responsible for a voluntary settlement paid out by Clark which it did not approve.

The trial court found that the right to indemnification under the second sentence is broader in scope than under the first sentence, and requires Steele to defend Clark and pay its costs whenever a suit alleges acts or omissions on the part of Steele, and that the complaint in this case

pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the Court may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other

and 1 or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the Court shall return the jury for further consideration of its answers and verdict or shall order a new trial.
Super. Ct. Civ. R. 49.

clearly so alleged. Regarding the issue of whether a "settlement" was included within the term "judgment" as used in the agreement, the court concluded that it "made no sense to [ ] have a contract that would require in the first instance [Steele] to pay the settlement if it had the duty to defend and had abided by its duty. But then to say if it doesn't abide by its duty and waits until everything is over, it doesn't have to pay the settlement." Therefore, notwithstanding the jury's verdict denying indemnification for Clark under the first sentence of the indemnification provision—the only one submitted to the jury—the court entered judgment for Clark in the amount of the settlement ($600,000) plus attorney's fees in the amount of $713,962.59, pursuant to the second sentence in the indemnification clause.

On appeal, Steele challenges the trial court's authority to interpret the second sentence of the indemnity clause and its ultimate conclusion that this second sentence required Steele to indemnify Clark without regard to the jury's finding that Steele's acts or omissions were not responsible for Mr. Berrios's injuries.[5]

## II.

"The meaning of an integrated contract is an issue for the finder of fact only if the contractual language is ambiguous, . . ., *i.e.*, where its interpretation depends upon the credibility of extrinsic evidence or upon a choice of reasonable inferences from such evidence." *Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1092 (D.C.1988) (citing *Int'l Bhd. of Painters & Allied Trades v. Hartford Accident & Indem. Co.*, 388 A.2d 36, 43 (D.C.1978)). Whether a contract is ambiguous is a question of law for the court to determine, reviewed *de novo* on appeal. *See id.* at 1092; *Akassy v. William Penn Apts., Ltd. P'ship.*, 891 A.2d 291, 299 (D.C.2006). In determining whether a contract is ambiguous, the court must consider that "contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction." *Dodek*, 537 A.2d at 1093 (quoting *Holland v. Hannan*, 456 A.2d 807, 815 (D.C.1983)). Ambiguity exists only if the court determines that the proper interpretation of the contract cannot be derived from the contractual language exclusively, and requires consideration of evidence outside the contract itself. *See Dodek*, 537 A.2d at 1093. As in *Dodek*, "[n]one of the parties here contends that extrinsic evidence is at issue; instead, they have merely presented two competing versions of what the parties intended by the disputed language in the . . . contracts." *Id.* Consistent with their litigation posture that only the factual questions and liability under the first sentence should be submitted to the jury, the parties stipulated in the trial court that the second sentence of the indemnity clause is not ambiguous and that its meaning should be determined by the judge. Therefore, the interpretation of the contract was properly for the trial court, and we review its interpretation, a question of law, *de novo*. *See, e.g., DSP Venture Group, Inc. v. Allen*, 830 A.2d 850, 852 (D.C.2003); *cf. Brown v. Union Station Venture Corp.*, 727 A.2d 878, 881–82 (D.C.1999) (applying "plainly wrong" standard of review to trial court's interpretation of ambiguous contract language requiring consideration of extrinsic evidence of parties' intent).

---

5. Steele does not challenge the amounts awarded, but its obligation to make any payment under the indemnification clause.

"Fundamentally, when interpreting a contract, 'the court should look to the intent of the parties entering into the agreement.'" *Dodek*, 537 A.2d at 1093 (quoting *Intercounty Constr. Corp. v. District of Columbia*, 443 A.2d 29, 32 (D.C. 1982) (citation omitted). The question of intent is resolved by an objective inquiry, and "[t]he first step" is therefore to determine "what a reasonable person in the position of the parties would have thought the disputed language meant." *Id.* (quoting *Intercounty Constr. Corp.*, 443 A.2d at 32). Contractual provisions are interpreted taking into account the contract as a whole, so as to give effect, if possible, to all of the provisions in the contract. *See Akassy*, 891 A.2d at 303 (noting that "[w]e construe the contract as a whole, giving effect to each of its provisions, where possible") (citation omitted)).

The first sentence [6] speaks generally of Steele's duty to indemnify Clark and the owner—perhaps envisioning a situation where Steele is sued for harm suffered on the worksite and seeking to clarify that Steele cannot, in turn, sue Clark or the owner for indemnification or contribution even if Steele would not otherwise be legally responsible ("whether or not involving negligence" of Steele). If Steele's acts or omissions "result[ed], in whole or in part" in the harm, then Steele is wholly responsible. The second sentence,[7] on the other hand, further clarifies that if both

Clark (and the owner) and Steele are sued by a third-party for harm merely "involving" Steele's acts or omissions, Steele is not only responsible for defending them and paying any costs or expenses resulting therefrom, but also for any final judgments entered against them.

The second sentence expands and further details Steele's responsibilities in the event both Clark and Steele are sued for harm suffered on the worksite. Unlike in the first sentence, which refers to "injury ... as a result, in whole or in part of [Steele's] acts or omissions," nothing in the language of the second sentence ("any action involving [Steele's] acts or omissions") suggests that Steele's duties to defend and indemnify are in any way fact-based, rather than based on the claim made. And the parties did not use any language, in either sentence, that would indicate, to a reasonable person, that Steele must first be found responsible for the injuries in order to trigger its duty to defend Clark at its own expense and pay all costs and expenses. Indeed, in a suit such as the one filed by Mr. Berrios, which alleged acts and omissions by both Steele and Clark, it would be impractical for Steele to satisfy its duty to "at its own expense [to] defend Clark" if it waited until after trial to decide whether it was responsible for doing so. By so construing the sentences together,

---

6. The first sentence reads:

If any person (including employees of Subcontractor [Steele]) suffers injury or death or any property is damaged, lost or destroyed, *as a result*, in whole or in part, of Subcontractor's acts or omissions, whether or not involving negligence of Subcontractor, his employees, agents or lower-tier subcontractors, Subcontractor assumes the liability therefor and shall indemnify and hold harmless therefrom the Owner and Clark and their agents, servants, employees, and sureties.

(Emphasis added).

7. The second sentence reads:

With respect to any action *involving* Subcontractor's [Steele's] acts or omissions, (i) Subcontractor shall at its own expense defend Clark and all other indemnified parties, and (ii) Subcontractor shall pay all costs and expenses, including attorney's fees, of, and satisfy all judgments entered against, Clark and all other indemnified parties.

(Emphasis added.)

we give effect to both. *See Akassy*, 891 A.2d at 303.

■ Here, Mr. Berrios alleged in his complaint that Steele "failed to properly inspect and evaluate the newly excavated portion for additional 'lagging' to protect the area from a wall collapse." Furthermore, the complaint alleged that Clark "instructed the Plaintiff to shovel the trench along the wall of the new excavation which had approximately seven to ten feet of exposed weathered rock which was 'unlagged' or unsupported." Therefore, the action involved alleged acts and/or omissions on the part of both Steele and Clark that caused the plaintiff's injuries. As a result, it was an action "involving Subcontractor's acts or omissions," and, since it also included claims against Clark, the second sentence of the indemnification clause required Steele "at its own expense [to] defend Clark ... [and] pay all costs and expenses, including attorneys' fees, of, and satisfy all judgments entered against, Clark." *See Skinner v. Derr Constr. Co.*, 850 So.2d 24, 27–28 (La.App. 4 Cir. 2003) (construing similar language in an indemnity clause broadly against the subcontractor where two of the subcontractor's employees were injured and had sued the contractor and subcontractor, finding the subcontractor liable for the contractor's pre-suit costs of investigating the workplace accident, where the subcontractor had failed to participate in the investigation, and concluding that the subcontractor's "liability ... attached at the inception of the workplace accident for all costs and expenses of [contractor's] defense, which included the investigation costs, as well as the experts' and attorneys' fees").

This reading of the contractual language is sensible in light of the contract as a whole, which places virtually all costs and liabilities on Steele, indicating the intention of the parties to shift the assumption of risk from contractor to subcontractor.[8] Moreover, Paragraph 30(b) of the parties' contract, entitled "Interpretation of Contract Documents," provides that "in the event of a conflict between or among the terms of this Subcontract, the higher standard or greater requirement for Subcontractor shall prevail; and in the event of a conflict between or among the terms of the Contract Documents, the higher standard or greater requirement for Subcontractor shall prevail." Therefore, our interpretation is not only supported by application of general contract law that provisions be construed in the context of the contract as a whole, *see Akassy*, 891 A.2d at 303, but also mandated by the parties' instruction that any ambiguity or conflict be read in favor of holding Steele more strictly accountable.

■ The remaining question of contract interpretation is whether the trial court properly construed the language in the second sentence of the indemnity clause requiring Steele to "satisfy all judgments entered against Clark" as including its settlement with Mr. Berrios. Steele argues that a "settlement" is not a "judgment" and thus is not covered by the indemnification clause. We fail to see a meaningful distinction between the two. We agree with the trial court that a reasonable interpretation of this clause should not allow Steele to benefit from breaching its duty to defend Clark by successfully

---

**8.** For example, Steele "assume[d] the entire responsibility and liability for all work, supervision, labor and materials," until "final acceptance of work by the Owner," even in the event of "loss, damage, or destruction thereof from any cause," and Steele's assumption of liability was "independent from, and not limited in any manner by, [Steele's] insurance coverage" obtained pursuant to the contract, which required Steele to procure an insurance policy listing Clark and the owner as additional insured parties.

arguing that Steele is not entitled to indemnification because it settled with Mr. Berrios pre-trial—likely mitigating the damages for which Steele would be responsible—rather than proceeding to trial and final judgment. Moreover, because Steele did not abide by its duty to at "its own expense defend Clark," it cannot now complain about the manner in which Clark proceeded with its own defense—in Steele's absence—that is, to settle the claim rather than defending it at trial. *Cf. Skinner*, 850 So.2d at 28 (Finding that where a prompt investigation of the work place accident was "logical," the "subcontractor could have participated in that investigation, but declined to do so for unknown reasons. For the subcontractor then to resist reimbursement of the costs incurred in such a necessary investigation under the guise that the contract called for such reimbursement only subsequent to filing suit is illogical and defies a plain reading of the contract."). In light of the contract's mandate that in case of conflict, the "greater requirement" be imposed on Steele, and especially where Steele did not undertake to defend Clark and agreed prior to trial that Clark's $600,000 settlement with Mr. Berrios was "fair and reasonable," [9] we affirm the order of the trial court that Clark is entitled to be indemnified by Steele for its settlement with Mr. Berrios.

We, therefore, affirm the trial court's conclusion that pursuant to the second sentence of the indemnity clause Steele is required to indemnify Clark for the settlement amount and its attorney's fees, regardless of the jury's verdict under the first sentence of the clause.

*Affirmed.*

---

9. There may be instances where an indemnifying party may not be responsible for a settlement amount it deems to be unreasonable, particularly if it has taken up its obligation to defend the indemnitee. In such a case, the indemnitor could present the affirmative defense that the indemnitee interfered with its proposed defense strategy or failed to mitigate its damages. *See, e.g., S. Brooke Purll, Inc. v. Vailes*, 850 A.2d 1135, 1139 (D.C.2004); *Howard Univ. v. Lacy*, 828 A.2d 733, 739 n. 8 (D.C.2003); *Norris v. Green*, 656 A.2d 282, 287–88 (D.C.1995). Here, Steele not only did not defend Clark, but also agreed that the settlement amount was fair and reasonable.