**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 09-1697
_____

RED ROOF INNS, INCORPORATED,

Plaintiff - Appellant,

v.

SCOTTSDALE INSURANCE COMPANY,

Defendant - Appellee.

_____

No. 09-1760
_____

RICKI KEYE; WARREN KEYE,

Plaintiffs,

v.

RED ROOF INNS, INCORPORATED; ACCOR NORTH AMERICA, INCORPORATED; RED ROOF FRANCHISING, LLC; RRI ACQUISITION COMPANY, INCORPORATED,

Defendants – Appellants,

v.

S & W PROTECTIVE SERVICES, INCORPORATED,

Third Party Defendant – Appellee.

_____

Appeals from the United States District Court for the District of Maryland, at Greenbelt. William Connelly, Magistrate Judge. (8:08-cv-01841-WGC; 8:07-cv-02926-WGC)

Argued: January 28, 2011                    Decided: March 22, 2011

Before DUNCAN and WYNN, Circuit Judges, and Irene C. BERGER, United States District Judge for the Southern District of West Virginia, sitting by designation.

Reversed by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Wynn and Judge Berger joined.

**ARGUED:** Angus R. Everton, MORGAN CARLO DOWNS & EVERTON, PA, Hunt Valley, Maryland; Stephen Salvatore McCloskey, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellants. Kevin Bock Karpinski, KARPINSKI, COLARESI & KARP, PA, Baltimore, Maryland, for Appellees. **ON BRIEF:** Eric M. Leppo, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellants. Michael B. Rynd, KARPINSKI, COLARESI & KARP, PA, Baltimore, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

This consolidated appeal arises out of a dispute over whether Plaintiff-Appellant Red Roof Inns, Inc. ("Red Roof Inns")[1] is entitled to indemnity and insurance coverage for a personal injury claim filed against it. Red Roof Inns appeals the grant of summary judgment in favor of Defendant-Appellees S&W Protective Services, Inc. ("S&W") and Scottsdale Insurance Company ("Scottsdale").[2] For the reasons that follow, we reverse.

I.

S&W provides security guard services to Red Roof Inns pursuant to a Security Services Agreement ("Agreement"). The Agreement provides that S&W "shall defend, protect, indemnify and hold [Red Roof Inns] harmless" for any claim for damages which may "arise out of or in connection with" S&W's performance of the Agreement, J.A. 42 (¶ 11), including specifically any "claims or suits arising out of injury to . . . any of [S&W's] employees . . . in connection with their performance under this

---

[1] "Red Roof Inns" refers to the four entities sued in the underlying action: Red Roof Inns, Inc., Accor North America, Inc., Red Roof Franchising, LLC, and RRI Acquisition Co., Inc.

[2] The matter was heard by a United States magistrate judge, acting by consent and agreement of the parties pursuant to 28 U.S.C. § 636(c), whom we shall refer to hereafter as the district court.

Agreement," J.A. 44 (¶ 12). S&W's indemnification obligations under the Agreement "extend to any damages resulting from any action or omission of [Red Roof Inns], negligent or otherwise." Id. at 42 (¶ 11); see also id. at 44 (¶ 12) (extending indemnification to Red Roof Inns for claims of personal injury, "whether or not caused or contributed by the negligence of [Red Roof Inns]").[3]

---

[3] The full text of the relevant provisions provides:

11.    Indemnity and Insurance. . . . Contractor [S&W] shall defend, protect, indemnify and hold Customer [Red Roof Inns] harmless from and against any liability, loss, cost, threat, suit, demand, claim and expense . . . for damages to property or person which may arise out of or in connection with any negligent act or omission of Contractor in connection with its performance under this Agreement . . . . It is intended by the parties hereto that the indemnification obligations of Contractor under this Section shall extend to any damages resulting from any action or omission of Customer, negligent or otherwise, except for damages arising out of the intentional or willful misconduct of Customer.

12.    Injury or Death.    . . . In addition, Contractor, its employees and agents hereby waive and release Customer . . . from any and all claims, demands, causes of action for injury to property or person . . . arising out of or in connection with Contractor's performance under this Agreement . . . whether or not caused or contributed to by the negligence of Customer . . . . Contractor further agrees to defend, protect, indemnify, and hold Customer harmless from and against any and all costs, losses, claims and expenses . . . as a result of claims or suits arising out of injury to or death of any of Contractor's employees . . . in connection with their performance under this Agreement, whether or not

(Continued)

4

S&W also purchased a general liability insurance policy ("Policy") from Scottsdale that contained an endorsement naming Red Roof Inns as an additional insured. The Policy insured Red Roof Inns "with respect to liability arising out of [S&W's] ongoing operations performed for [Red Roof Inns]." J.A. 95.

On October 14, 2004, Warren Keye, an S&W employee, was working as a security guard at a motel owned and operated by Red Roof Inns. As Mr. Keye was ascending an exterior staircase to investigate suspected criminal activity on an upper floor of the motel, the metal rim of a concrete step on the stairway collapsed, and he fell backward down several steps. Red Roof Inns does not dispute its negligence for purposes of our inquiry.

In October of 2007, Mr. Keye and his wife filed a personal injury action against Red Roof Inns. Red Roof Inns made a formal demand to S&W to defend and indemnify it under their Agreement, and to Scottsdale to defend and indemnify it pursuant to the Policy naming Red Roof Inns as an additional insured. Both S&W and Scottsdale declined to defend or indemnify, and Red

_____

> caused or contributed by the negligence of Customer, its employees or agents . . . .

J.A. 42-43.

Roof Inns brought suit against both. All parties moved for summary judgment.

On May 20, 2009, the district court granted summary judgment in favor of S&W and Scottsdale and dismissed Red Roof Inns' claims. The district court reasoned that "it [was] not plainly evident from the face of the Agreement that S&W agreed to indemnify Red Roof Inns for damages resulting from [its] negligent inspection and maintenance of exposed exterior steel stairwells." J.A. 787. Finding ambiguity, the court considered extrinsic evidence in the form of deposition testimony from S&W's President and Chief Executive Officer, who denied any intention by the parties to hold S&W responsible under the Agreement for building maintenance or structural inspections. The court held that the parties did not intend to shield Red Roof Inns from its own negligence in this circumstance.

In response to Red Roof Inns' request for reconsideration,[4] on June 16, 2009, the court issued an order holding that Scottsdale did not owe Red Roof Inns indemnity and a defense. The court observed that the Policy covers claims of "bodily injury," but only if the bodily injury is caused by an "occurrence." J.A. 816. An "occurrence" is defined in the

_____

[4] Red Roof Inns requested reconsideration of the May Order on the grounds that the court did not address the issue of whether Scottsdale was obligated to provide coverage by virtue of Red Roof Inns' status as an additional insured.

6

Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." J.A. 76. Although the court determined Mr. Keye's fall was an accident, it nonetheless found that Mr. Keye's fall did not qualify as an "occurrence" under the Policy. It reasoned that the Policy's coverage was restricted to liability "arising out of S&W's ongoing operations" performed for Red Roof Inns, and because the court had already determined in its May Order that Mr. Keye's fall did not arise out of the security services provided by S&W under the Agreement, the Policy's coverage did not extend to Red Roof Inns as an additional insured. J.A. 817-18.

II.

Red Roof Inns challenges the district court's determinations in both cases, which have been consolidated for appeal. As to S&W, Red Roof Inns asserts that the Agreement unambiguously provides for coverage irrespective of its negligence. As to Scottsdale, Red Roof Inns argues that it qualifies as an "additional insured" under the Policy. The issues are governed by the laws of the District of Columbia and Maryland, respectively, and we consider each in turn. As to both, we review the grant of summary judgment de novo, resolving all doubts and inferences in favor of the non-moving party.

7

Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004). When reviewing cross-motions for summary judgment, we consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Bacon v. City of Richmond, 475 F.3d 633, 638 (4th Cir. 2007) (internal citations and quotations omitted). In such cases, "we may, if appropriate, direct entry of judgment in favor of the party whose motion was denied by the district court." Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1020 (4th Cir. 1997).

## A.

We first consider whether the Agreement requires S&W to defend and indemnify Red Roof Inns for a claim alleging its own negligence. Under District of Columbia law,[5] the first step in contract interpretation is determining "the intent of the parties entering into the agreement." Steele Founds., Inc. v. Clark Constr. Grp., Inc., 937 A.2d 148, 154 (D.C. 2007). The question of intent is resolved by deciding "what a reasonable person in the position of the parties would have thought the

---

[5] Both parties agree that, pursuant to a choice of law provision in the Agreement (Section 15), the laws of the District of Columbia govern the interpretation of the security services contract. See J.A. 774; Appellant's Br. at 16, Appellee's Br. at 12.

8

disputed language meant." Psaromatis v. English Holdings I, LLC, 944 A.2d 472, 481 (D.C. 2008) (quoting 1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc., 485 A.2d 199, 205 (D.C. 1984)). In so doing, the contractual provisions "must be interpreted as a whole," id., "so as to give effect, if possible, to all of the provisions in the contract," Steele Founds., 937 A.2d at 154.

If the instrument is facially unambiguous, "its language should be relied upon as providing the best objective manifestation of the parties' intent." 1010 Potomac, 485 A.2d at 205. Only in the event of ambiguity may a court consider extrinsic evidence of the parties' subjective intent. Id. Whether a contract's language is ambiguous is a question of law. Steele Founds., 937 A.2d at 153. Ambiguity exists "only if the court determines that the proper interpretation of the contract cannot be derived from the contractual language exclusively, and requires consideration of evidence outside the contract itself." Id.

Parties are free to enter into indemnification contracts under District of Columbia law. See W.M. Schlosser Co., Inc. v. Md. Drywall Co., Inc., 673 A.2d 647, 653 (D.C. 1996). However, indemnity provisions should be construed to permit an indemnitee to recover for its own negligence only if "the court is firmly convinced that such an interpretation reflects the intention of the parties." Id. (internal quotations and

9

citation omitted). The question here becomes, then, whether the Agreement "clearly reflects" the parties' intention to indemnify Red Roof Inns for claims involving its own negligence. Id. We find that it does.

The Agreement requires S&W to defend and indemnify Red Roof Inns for "any injury to any person . . . resulting from or arising out of any act . . . in connection with [S&W's] performance under this Agreement." J.A. 42 (¶ 11). It expressly states that the indemnification "is intended by the parties" to "extend to any damages resulting from any action or omission of [Red Roof Inns], negligent or otherwise." Id. (emphasis added). Paragraph 12 of the Agreement is even more specific, explicitly providing that S&W will defend and indemnify Red Roof Inns for any claims or suits brought by S&W employees against Red Roof Inns for injuries "arising out of or in connection with [S&W employees'] performance under this Agreement . . . whether or not caused or contributed [to] by the negligence of [Red Roof Inns]." J.A. 44 (emphasis added).

S&W argues that the language in the Agreement is, at best, ambiguous because it is "susceptible to more than one reasonable interpretation." Appellees' Br. at 20. S&W contends that a reasonable person could interpret the Agreement to mean that S&W agreed to defend and indemnify Red Roof Inns for "the potential hazards that would normally attend the performance of a contract

10

for security services." Id. at 17-18. As support for this proposition, S&W cites Paragraph 11(b) of the Agreement, which requires S&W to maintain

> Comprehensive General Liability insurance (with independent contractor's coverage and coverage for liability assumed under contract, for libel, slander, defamation, false arrest, detention or imprisonment, malicious prosecution, wrongful entry or eviction, invasion of privacy, and for any claim for loss of property of Customer caused by a dishonest or fraudulent act of an employee of Contractor) . . . .

J.A. 43. S&W asserts that this description of the liability insurance coverage S&W is responsible for procuring for Red Roof Inns limits the scope of S&W's indemnification to "the list of specifically covered events" enumerated in Paragraph 11(b). Appellee's Br. at 17-18. However, a plain reading of Paragraph 11(b) in no way suggests that the examples listed are meant to be exhaustive, or that the type or scope of liability insurance coverage is intended to limit the general indemnification provisions found in Paragraphs 11 and 12.

Recognizing the Agreement's specificity with respect to negligence, S&W contended at oral argument that the language was too specific. In response to the question of what more the Agreement would have to say to demonstrate its intent to cover negligence, counsel asserted that the indemnification provisions would need to be so broad and inclusive as to state that "the Contractor [S&W] agrees to defend and indemnify the Customer

11

[Red Roof Inns] for any and all negligence claims by an S&W employee," and to not include the qualifier "under this Agreement." S&W's proposed language is unrealistic and unworkable. The fallacy of its contention is readily apparent. If the indemnification provisions were not limited to performance under this Agreement, S&W would be required to defend and indemnify Red Roof Inns for any and all claims of negligence brought by S&W employees, whether or not they worked for Red Roof Inns.

As written, Paragraphs 11 and 12 of the Agreement specifically and unambiguously evidence an intent by the parties to indemnify Red Roof Inns for its negligence. District of Columbia law confirms this reading. For example, in W.M. Schlosser Co., Inc. v. Md. Drywall Co., Inc., 673 A.2d 647 (D.C. 1996), an employee of the subcontractor-indemnitor sustained serious injuries after falling through a door-sized opening three stories high on a construction site. The employee sought damages from the general contractor, Schlosser, whose site did not meet safety standards. Id. at 649. Schlosser sought indemnification from the subcontractor under contractual language providing indemnity for "any and all claims . . . arising out of . . . or in connection with the execution of the work" contemplated by the contract. Id. at 653. The Schlosser court viewed the provision as "clear and certain in its terms

12

giving rise to no ambiguity." Id. at 654. It was "satisfied that the language of the contract is sufficiently clear that [indemnitor] is responsible not only for its own negligence, but that its liability also stretches to encompass [indemnitee's] negligence as well." Id. (internal quotations omitted).

Similarly, in N.P.P. Contractors, Inc. v. John Canning & Co., 715 A.2d 139 (D.C. 1998), the general contractor sought indemnification from the subcontractor for its own alleged "negligence in erecting, maintaining and/or inspecting the scaffolding [which] was a proximate cause of" injuries suffered by the subcontractor's employee. Id. at 140. The indemnification clause required the subcontractor-indemnitor to "indemnify and save harmless the [indemnitee] from any and all claims and liability for property damage and personal injury . . . arising out of or resulting from or in connection with the execution of the work." Id. The court found this language "unambiguous and enforceable." Id. at 142 (agreeing that the indemnification clause before it is "so broad and sweeping" as to cover damages "incurred in whole or in part by the negligence of the indemnitee") (emphasis omitted);[6] see also

_____

[6] S&W argues that because the above-cited cases are construction law cases, they are distinguishable because of the "differing natures of the work to be executed, and the respective frame of reference of the parties." Appellees' Br. at 27. It cites no law to support its proposition, nor do the (Continued)

<u>Princemont Constr. Corp. v. Baltimore and Ohio R.R. Co.</u>, 131 A.2d 877, 877-78 (D.C. 1975) (deeming an indemnification clause for "all liability for any and all loss and damage to property and claims for injury to or death of persons in connection with or growing out of" the contract to be "broad and comprehensive" enough "to exonerate the [indemnitee] from liability for its own negligent acts").

In short, if the indemnification language in the above-cited cases unambiguously evidenced the parties' intent to encompass the indemnitee's negligence, surely the Agreement's indemnification language does here as well. For the Agreement goes one step further by expressly stating that it is "intended by the parties" that S&W's indemnification obligations extend to any damages resulting from Red Roof Inns' acts or omissions, "negligent or otherwise." J.A. 42 (¶ 11). In other words, even if the "negligent or otherwise" phrases were missing from the Agreement, District of Columbia precedent establishes that the remaining provisions, with their repeated use of "any," are sufficiently broad and comprehensive to find indemnification of damages or injuries resulting from an indemnitee's negligent acts. See <u>Schlosser</u>, 673 A.2d at 654 (finding that clauses at

challenged cases themselves suggest that their holdings only apply in the construction law context.

14

issue in other cases--such as "indemnify . . . from any and all claims," "indemnify against any loss," or "assume all liability for any and all loss"--were all "sufficiently comprehensive as to include indemnification for damages resulting from the negligence of [indemnitee]") (emphasis added).  Because we find that the Agreement's indemnification language is not susceptible to more than one reasonable interpretation, we need not consider the testimony of S&W's President and CEO, or any other extrinsic evidence.

The Agreement's defense and indemnification provisions are unambiguous and clearly show that the parties agreed S&W would bear the financial burden for injuries sustained in connection to S&W's performance of the Agreement--even those injuries resulting "from any action or omission of [Red Roof Inns], negligent or otherwise."  J.A. 42.  As a result, S&W must defend and indemnify Red Roof Inns against Mr. Keye's claim.  J.A. 43 (requiring S&W to "defend," "indemnify," and "hold harmless" Red Roof Inns "from and against any and all costs, losses, claims and expenses" resulting from "claims or suits arising out of injury to . . . any of [S&W's] employees . . . in connection with their performance under this Agreement").  It is undisputed that Mr. Keye was injured while working as an employee for S&W.  Moreover, S&W conceded at oral argument that there is no dispute Mr. Keye was ascending the staircase in the performance of his

15

duties as a security guard, as he was investigating suspected criminal activity on an upper floor. This is the very type of security service contemplated by the Agreement. We see no reasonable interpretation under District of Columbia law other than that Mr. Keye's injury "ar[o]se out of or in connection with" S&W's performance under the Agreement. See, e.g., Schlosser, 673 A.2d at 653 (holding that injuries sustained by indemnitor's employee while performing contract work on indemnitee's work site arose out of or "in connection with the execution of the work" despite being caused by indemnitee's own negligence); Grunley Constr. Co. v. Conway Corp., 676 A.2d 477, 477-78 (D.C. 1996) (same). Pursuant to the terms of the Agreement, Red Roof Inns is entitled to both indemnity and a defense from S&W as a matter of law.

### B.

We next consider Red Roof Inns' argument that the district court erred by finding that Scottsdale does not have a duty to defend or indemnify it in the underlying Keye action. Applying the same de novo standard of review, we determine whether an insurer has a duty to defend an insured by following the two-part inquiry set forth under Maryland law.[7] We first assess the

---

[7] Maryland law governs the insurance policy issued by Scottsdale. The primary purpose in construing insurance contracts under Maryland law "is to ascertain and give effect to
(Continued)

16

nature of the coverage and terms of the insurance policy, and then determine whether the allegations in the tort action potentially bring the tort claim within the insurance policy's coverage. Aetna Cas. & Surety Co. v. Cochran, 651 A.2d 859, 862 (Md. 1995); see also Walk v. Hartford Cas. Ins. Co., 852 A.2d 98, 106 (Md. 2004). In undertaking this analysis, we look to (1) the language and requirements of the liability insurance policy and (2) the allegations of the complaint. Aetna Cas. & Surety Co., 651 A.2d at 862.

i.

With regard to the first step of the inquiry--the nature of the insurance policy's terms--the Policy here provides coverage for Red Roof Inns "with respect to liability arising out of [S&W's] ongoing operations performed for [Red Roof Inns]." J.A. 95. Paragraph 1(a) of Section I of the Policy specifically states:

> [Scottsdale] will pay those sums that [Red Roof Inns] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Scottsdale] will have the right and duty to defend [Red Roof Inns] against any "suit" seeking those damages. However, [Scottsdale] will have no duty to defend [Red Roof Inns] against any

---

the intentions of the parties at the time of contracting," which requires construing the instrument "as a whole." Catalina Enter., Inc. Pension Trust v. Hartford Fire Ins. Co., 67 F.3d 63, 65 (4th Cir. 1995) (internal citations and quotations omitted).

17

"suit" seeking damages for "bodily injury" or "property damages" to which this insurance does not apply. [Scottsdale] may, at [its] discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

J.A. 63 (¶ 1(a)). The Policy covers claims of "bodily injury," but only if the injury is caused by an "occurrence." Id. (¶ 1(b)(1)). According to the Policy, an "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." J.A. 76. The Policy does not define the word accident, but the Court of Appeals of Maryland has held that "an act of negligence constitutes an 'accident' under a liability insurance policy when the resulting damage . . . is unforeseen or unexpected by the insured." Sheets v. Brethren Mut. Ins. Co., 679 A.2d 540, 548 (Md. 1996) (internal citations and quotations omitted). As the district court found, Mr. Keye's fall was an "accident"--it was not within Red Roof Inns' foresight or expectation, nor that of anyone else. And an "accident" in the Scottsdale policy is, by definition, an "occurrence." But Scottsdale asserts Red Roof Inns is nonetheless precluded from coverage. It reasons that the Policy limits Red Roof Inns' coverage to "liability arising out of [S&W's] ongoing operations performed for [Red Roof Inns]," J.A. 80, and an occurrence/accident resulting from Red Roof Inns' negligent maintenance of the stairs is not a failure that arose out of the work which S&W was contracted to perform.

18

While the phrase "arising out of" has been the subject of prior interpretation by Maryland courts, it does not have a single, "settled meaning" that applies to every insurance policy. Phila. Indem. Ins. Co. v. Md. Yacht Club, Inc., 742 A.2d 79, 86 (Md. Ct. Spec. App. 1999). The phrase "arising out of" must be construed on a "contract by contract or case by case basis." Id. Scottsdale argues that the phrase "arising out of" in this particular case requires a more stringent, direct link between the cause of the injury and the resulting injury--that is, proximate causation. We agree with Red Roof Inns, however, that under Maryland law, a "but for" causal link--that is, a loose cause and result relationship--is enough to satisfy the Policy's "arising out of" requirement.

The Maryland Court of Appeals has not construed the "arising out of" language in a case which specifically involves the endorsement clause of a general liability insurance policy. The court has, however, interpreted this language with respect to other insurance contract clauses. For example, in Northern Assurance Co. of America v. EDP Floors, Inc., 533 A.2d 682 (Md. 1987), the court construed an exclusionary clause of a general business liability policy which excluded from coverage any bodily injury "arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any automobile." Id. at 686. An employee of an EDP Floors customer was injured

19

while assisting with the unloading of an EDP Floors truck, and the employee filed suit against EDP Floors, alleging liability for negligent supervision.  Id. at 684.

The Maryland Court of Appeals explained that the words "arising out of" must be afforded "their common understanding, namely, to mean originating from, growing out of, flowing from, or the like."  Id. at 688.  "While these words plainly import a causal relation of some kind, read in context, they do not require that the unloading of the truck be the sole 'arising out of' cause of the injury."  Id.  In other words, the court "reasoned that an injury could arise from various sources, but that the exclusion from coverage would apply as long as the clause covered at least one of the sources."  Teletronics Int'l, Inc. v. CNA Ins. Co., 302 F. Supp. 2d 442 (D.Md. 2004), reversed on other grounds, 120 F. App'x 440 (4th Cir. 2005) (interpreting EDP Floors and other Maryland cases).  EDP Floors rejected an argument, much like the one Scottsdale makes here, that the employer's negligence broke the chain of causation.  Instead it adopted a more lenient, "but for" causation approach, finding that "if [claimant's] bodily injury arose out of EDP's employee's unloading of the truck, then that injury is excluded from coverage . . . regardless of whether the injury may also be said to have arisen out of other causes further back in the sequence of events."  EDP Floors, 533 A.2d at 689.

Similarly instructive is the court's decision in Mass Transit Administration v. CSX Transportation, Inc., 708 A.2d 298 (Md. 1998). While the court in CSXT was called on to interpret an indemnification provision and not a liability insurance policy, it noted that, "[i]nasmuch as the indemnification was intended . . . to serve as liability insurance for . . . CSXT's liability, it is appropriate to interpret and apply the indemnification in the same manner as liability insurance policies." Id. at 304. CSXT was under contract to the Mass Transit Administration of Maryland ("MTA") to provide commuter rail service, and the MTA agreed to indemnify and defend CSXT for liability "arising out of the Contract Service under this Agreement." Id. at 300. CSXT hired a contractor to pave several of its public road crossings. The contractor's backhoe was subsequently destroyed when a CSXT commuter train struck it.

The contractor brought suit against CSXT, who in turn sought indemnification from the MTA, averring that the contractor's claim against it "arose out of" contract service because the commuter train was the direct physical cause of the damage to the backhoe. The MTA, much like Scottsdale here, argued that CSXT's negligence "further back in the chain of causation, caused the accident." Id. at 305. The court rejected this more stringent proximate cause requirement and interpreted the phrase "arising out of" in the CSXT-MTA

21

agreement to require only "but for" causation. It reasoned that CSXT's own negligence in failing to warn the contractor of an approaching train "d[id] not diminish the fact that the damage to the backhoe arose out of the collision with the [commuter] train." Id.

Scottsdale contends, however, that the Maryland Court of Appeals' decision in Phila. Indem. Ins. Co. v. Md. Yacht Club, Inc., 742 A.2d 79 (Md. Ct. Spec. App. 1999) demonstrates that a stronger nexus between the injury and policy provision is required. In that case, an insurance company unsuccessfully attempted to avoid defense and indemnification for an employee's claim of wrongful discharge, which the employee contended was motivated by his "having sought [workers compensation] benefits for a leg injury." Id. at 83-84. Contrary to Scottsdale's insistence that Md. Yacht Club is relevant to our analysis here, we believe a claim for wrongful discharge is analytically distinct from a claim expressly for bodily injury, and do not find the case instructive.[8] Instead, we believe the court's

_____

[8] Apart from its citation to Md. Yacht Club, Scottsdale relies almost exclusively on cases interpreting "arising out of" in the context of the Maryland Uninsured Motorist Act. We do not find these decisions relevant to our inquiry, given that uninsured motorist claims implicate a distinctive type of insurance coverage that is not at issue here.

Scottsdale also urges us to follow G.E. Tignall & Co. v. Reliance National Insurance Co., 102 F. Supp. 2d 300 (D. Md. 2000), a federal district court case applying Maryland state law (Continued)

22

rulings in EDP Floors and CSXT are more applicable to the context, and Policy terms, found in the case at bar. There, like here, the damage/injury would not have occurred but for the claimant's performance of its duties pursuant to the underlying contract, and the existence of other reasons or sources of the damage/injury did not diminish the "arising out of" causal link that had been established. Accordingly, we conclude, just as those cases did, that the Policy's "arising out of" language in this case requires no more than "but for" causation. The causal requirement is met regardless of whether Mr. Keye's injury may also be said to have arisen out of Red Roof Inns' negligent failure to maintain the stairwell.

---

to a disputed endorsement clause that contains an "arising out of" provision similar to the disputed language here. The court found that the endorsement clause was unambiguous and that the insurance policy did not cover Tignall for its own negligent acts. Significantly, the district court did not discuss Maryland case law finding the phrase "arising out of" ambiguous, or those decisions requiring only "but for" causation. As a result, we are not persuaded by its reasoning.

In short, Scottsdale fails to cite any Maryland case that indicates we must adopt a proximate cause approach. It merely contends that "[n]othing in the more recent cases precludes this Court from applying a standard other than 'but for' causation to the instant circumstances." Appellees' Br. at 40 (emphasis added). We disagree and find that Maryland case law establishes that "but for" causation satisfies the Policy's "arising out of" requirement here.

Having examined the terms of the Policy, we now turn to the second step of the Aetna inquiry, which considers whether the facts alleged in the complaint bring Mr. Keye's tort claim within the Policy's coverage. The complaint alleges that Mr. Keye was injured while "working at a motel as a security guard for S&W Protective Services, Inc. a security company contracted by [Red Roof Inns]." J.A. 17. It further claims that "[a]t that time, while Plaintiff was ascending one of the stairways at the motel, the metal rim on the edge of a concrete step on the stairway collapsed when Plaintiff put his foot on said step" and he fell, sustaining multiple injuries. J.A. 17-18. In other words, S&W was employed to provide security services at Red Roof Inns, and at the time he sustained his injury, Mr. Keye was an S&W employee providing the sort of security service work that S&W was contracted to perform.

As explained above, the Policy covers claims for "bodily injury" caused by "occurrences" (or, accidents). Mr. Keye's allegations in the complaint not only indicate that he suffered bodily injury as the result of an accident, just as the district court found; they also establish that he would not have been injured on the Red Roof stairway that day but for his presence on the stairway as a result of his employment with S&W and his carrying out of security services pursuant to his employer's

24

contract with Red Roof Inns.  This "but for" causal link is sufficient under the terms of the Policy irrespective of any negligence on Red Roof Inns' part that could be characterized as an additional reason for the injury.  Mr. Keye's injury--as alleged in his complaint--"ar[ose] out of [S&W's] ongoing operations performed for [Red Roof Inns]."  J.A. 95.  Red Roof Inns is entitled to both coverage and a defense from Scottsdale as a matter of law.[9]

## III.

For the foregoing reasons, we reverse and vacate the judgment of the district court granting summary judgment to S&W and Scottsdale.  On remand, the district court should enter summary judgment in favor of Red Roof Inns.

<u>REVERSED</u>

---

[9] Scottsdale's argument that "there are no provisions in the Policy permitting Red Roof to gain coverage for negligence that predated the policy," Appellee's Br. at 44, is meritless.  The Policy's coverage is triggered not by the date when Red Roof Inns' alleged negligence began, but by the date when "bodily injury" occurred.  J.A. 63.

25