EASTERLY, Associate Judge:
This matter comes before the court on appellant Alfredo Salvattera’s emergency motion for a stay pending appeal. On August 26, 2014, the Superior Court determined that there was good cause to believe that Mr. Salvattera had had unwanted sexual contact with appellee Isela Ramirez, thereby committing misdemeanor sexual abuse. The court issued a one-year Civil Protection Order (CPO) generally directing Mr. Salvattera to have no contact with Ms. Ramirez and specifically directing Mr. Salvattera to vacate his apartment — an apartment which he does not share, and has never shared, with Ms. Ramirez and in which she has no ownership or possessory interest, but which is located in the same building as Ms. Ramirez’s apartment. Mr. Salvattera filed a motion under Superior Court Rule of Civil Procedure 59(e) arguing that the vacate order exceeded the Superior Court’s statutory remedial authority under D.C.Code § 16-1005(c) (2012 Reph), and a motion for a stay pending appeal. Both motions were denied. In this court Mr. Salvattera has filed a notice of appeal and renewed his request for a stay of the vacate order, again challenging the court’s statutory authority to issue it. After granting Mr. Salvattera an administrative stay, this court, on September 17, 2014, held oral argument on Mr. Salvatt-era’s motion for a stay of the vacate order pending appeal. We now grant Mr. Sal-vattera the requested stay. The remainder of the CPO remains in force.
*1005 “To prevail on a motion for stay, a movant must show that he or she is likely to succeed on the merits, that irreparable injury will result if the stay is denied, that opposing parties will not be harmed by a stay, and that the public interest favors the granting of a stay.” Barry v. Washington Post Co., 529 A.2d 319, 320-21 (D.C.1987). “These factors interrelate on a sliding scale and must be balanced against each other.” Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1318 (D.C.Cir.1998).[1] Conducting this balancing of the second and third factors, we conclude that they more or less cancel each other out. Although we acknowledge that Mr. Salvattera will suffer irreparable harm if he is forced to move out of his home, Ms. Ramirez represents that she too will suffer harm if Mr. Salvattera remains, because she cannot continue to live in the same apartment building where he lives.[2] Thus, our resolution of this motion turns on the likelihood the Mr. Salvattera will succeed on the merits of his argument that the Superior Court acted extralegally, coupled with the determination that the public interest accordingly favors a stay.
When the Superior Court initially issued the vacate order it did not cite to any specific provision of the Intrafamily Offenses Act as authorizing this directive. We assume it relied on the provisions Ms. Ramirez had cited to the court: D.C.Code §§ 16 — 1005(c)(4) and (e)(11). We examine each provision in turn.
D.C.Code § 16-1005(c)(4) addresses when a court, having determined that the petitioner is entitled to a CPO, may take the significant step of ordering a respondent to vacate the petitioner’s “dwelling unit.” D.C.Code § 16 — 1005(c)(4). The court may do so if the dwelling unit is:
• “Marital property of the parties,” D.C.Code § 16-1005(c)(4)(A) — inapplicable in this case because Mr. Salvattera and Ms. Ramirez are not married;
• “Jointly owned, leased, or rented and occupied by both parties; provided, that joint occupancy shall not be required if the respondent’s actions caused the petitioner to relinquish occupancy,” D.C.Code § 16-1005(c)(4)(B) — inapplicable in this case because Mr. Salvattera did not jointly possess and occupy a residence with Ms. Ramirez and never had;[3]
• “Owned, leased, or rented by the petitioner individually; or Jointly owned, leased, or rented by the petitioner and a person other than the respondent,” D.C.Code §§ 16-1005(e)(4)(C), (D)— inapplicable in this case because the court ordered Mr. Salvattera to vacate his apartment, not an apartment in which Ms. Ramirez had any ownership or possessory interest.
Indeed, Ms. Ramirez was eligible to seek a CPO under D.C.Code § 16-1003 (2012 Repl.), only because she falls under the *1006 newly expanded definition for “petitioner,” which, as revised in 2007 and then 2009,[4] now includes not only individuals who allege they are the victims of “interpersonal, intimate partner, or intrafamily violence” and who thus might be expected to have the dwelling arrangements described above, but also all individuals who allege they are victims of stalking, sexual assault, or sexual abuse, without regard to whether they have any current or prior relationship or domestic arrangement with the alleged perpetrator. D.C.Code § 16-1001(12) (2012 Repl.). Because (c)(4) was not amended to afford relief to individuals who, like Ms. Ramirez, fall in this latter category, D.C.Code § 16-1005(c)(4) does not authorize the court’s vacate order in this case.
Ms. Ramirez also cited D.C.Code § 16-1005(c)(11) as a basis for the court’s authority to order Mr. Salvattera to vacate his apartment. And in fact this was the statutory authority the Superior Court relied upon in its order denying Mr. Salvattera’s Rule 59(e) motion to Alter or Amend the- Judgment. Section 16 — 1005(c)(11) is a catchall provision; it authorizes a court issuing a CPO to “[d]irect[] the respondent to perform or refrain from other actions as may be appropriate to the effective resolution of the matter.” D.C.Code § 16-1005(c)(11). For the purpose of assessing Mr. Salvattera’s likelihood of success on the merits, we do not think D.C.Code § 16-1005(c)(11) can be read so broadly as to authorize the vacate order in this case. Instead we understand D.C.Code § 16-1005(c)(4) to define all circumstances under which a court may currently require a CPO respondent to vacate his residence[5] and we see no support for an interpretation of the catchall provision of D.C.Code § 16-1005(c)(11) that circumvents those limitations.
In support of this interpretation of the Intrafamily Offenses Act, we note that the catchall provision appeared in the original version of the statute,[6] while the provision codified in D.C.Code § 16-1005(c)(4) granting authority to order a respondent to vacate a residence — that of a petitioner — was added only later, in 1982, indicating that the preexisting catchall was not understood to give courts such authority. Indeed, in the Report discussing 1982 amendments, the Committee on the Judiciary observed that “several critical weaknesses in the District’s current intrafamily offenses law have surfaced” and “existing remedies have been shown to be inadequate.” [7] The proposed amendments were “designed to fill in ... areas of need in the current District law,” inter alia, by “supplementing existing remedies” and authorizing courts to “direct[ ] an offending householder or family member to vacate the dwelling unit.”[8] Elsewhere the Report acknowledged that “[f]ive remedies, including a very broad one [referring to the catchall] already exist in the local law,” *1007 but nonetheless characterized the power to issue a vacate order as one of six “new statutory remedies available to the court issuing protection orders.”[9]
By the same token, we note that with the addition of D.C.Code § 16 — 1005(c)(4) the Council carefully delineated circumstances under which courts had the power to order a respondent to vacate a “dwelling unit.” There would be little point in drafting the vacate provisions of (c)(4) with such precision if it were already understood that courts possessed broad power to issue vacate orders under the catchall provision of the statute. (And if this were the case, then (c)(4) would have been recognized as having a limiting effect — not the “expanding” effect ascribed by the Council.).
Lastly, we note that when the Intrafamily Offenses Act was amended again in 2007 and 2009, and the class of petitioners was expanded beyond the “intrafamily” context to include victims of stalking, sexual assault, or sexual abuse generally,[10] there was no indication that the Council wished to empower courts to order the correspondingly expanded class of respondents to vacate their homes. As noted above D.C.Code § 16-1005(c)(4) was not amended. Nor was there any indication that the Council believed an amendment was unnecessary and that courts already possessed broad power under the catchall provision to issue vacate orders. Against this backdrop of legislative silence, we determine that such power does not currently exist. If the Council desires that petitioners who have established by the low measure of good cause[11] that they were victims of stalking, sexual assault, or sexual abuse be able to obtain a one-year CPO not only directing the respondent to have no contact with them, but also forcing the respondent to vacate his or her separate preexisting residence — because it is in the same apartment building, or on the same block, or in the same neighborhood as the petitioner’s residence — then the Council will have to grant this power expressly.[12]
*1008 The gap we have identified in the statute is not filled by this court’s general pronouncements that the Intrafamily Offenses Act must be interpreted broadly in light of its remedial purpose. We have made such statements exclusively in the context of intrafamily offenses, acknowledging the distinct dynamics of intimate partner violence.[13] These dynamics were very much on the mind of the Council at the time of the passage of the Intrafamily Offenses Act[14] and do not obviously transfer to crimes by mere acquaintances or strangers. In any event, we cannot interpret broadly that which is not there. Put another way, even accepting that (c)(11) should be interpreted broadly in cases that fall both within and outside the intrafamily context, (c)(11) cannot give courts power in the latter context that they never had in the former.
As we acknowledged in Robinson v. Robinson, “ordering a person to vacate his or her home ... is a serious step, not to be lightly undertaken.” 886 A.2d 78, 86 (D.C.2005). This is particularly true given that, in the civil protection order context, a petitioner’s burden of proof is only good cause — far less than the burden of proof beyond a reasonable doubt required in criminal cases.[15] Although the Council has *1009 established and this court (in the context of discussing D.C.Code § 16-1005(c)(4)) has recognized that this serious step “can be a necessary measure to ensure peace and safety” of petitioners in the context of intrafamily offenses, Robinson, 886 A.2d at 86,[16] the same cannot yet be said for the new class of petitioners, general crime victims, who may now seek a CPO under the Intrafamily Offenses Act. A merits division of this court may ultimately reach a different conclusion, but for now, while Mr. Sal-vattera’s appeal is pending and while the other provisions of the CPO are in force, we determine that Mr. Salvattera has at least shown a likelihood of success on the merits of his argument that the court exceeded its authority in ordering him to vacate his apartment.[17] Thus, a stay of the Superior Court’s vacate order is warranted.

So ordered.

Dissenting opinion by Associate Judge GLICKMAN.

. See also Akassy v. William Penn Apartments Ltd. P’ship, 891 A.2d 291, 310 (D.C.2006) (“A stay may be granted with either a high probability of success and some injury, or vice versa." (quoting Cuomo v. U.S. Nuclear Regulatory Comm’n, 772 F.2d 972, 974 (D.C.Cir.1985)) (brackets omitted)).

. We note, however, that there was a four-month span of time between the date of the alleged assault forming the basis for Ms. Ramirez's request for a CPO and the date Ms. Ramirez came to court and filed her CPO request. During that time Ms. Ramirez continued to live without incident in the same apartment building as Mr. Salvattera, except for one encounter when she saw him, not in their building, but standing on the street by his car as she went outside to take out the trash.

.Rather, the court determined that they were mere acquaintances who lived in the same apartment building.

. D.C. Law Nos. 16-306 § 206(a), 17-368 § 3(b)(2).

. The dissent argues that this interpretation of D.C.Code § 16-1005(c)(4) would permit a respondent to stalk a petitioner by moving into a residence in close proximity after CPO proceedings have begun. Dissent at 1016 note 37. But such a scenario quite clearly can be prevented by a stay-away order issued under D.C.Code § 16-1005(c)(2), or as part of a Temporary Protection Order (TPO), pending a ruling on the CPO petition, see D.C.Code § 16-1004.

. D.C. Law No. 4-144.

. D.C. Council, Comm, on the Judiciary, Report on Bill 4-195 at 2 (May 12, 1982).

. Id. at 2-3; see also id. at 1 (identifying as "the purpose of this bill," the Council’s aim to "expand the coverage and protections of the District’s intrafamily offense law”).

. Id. at 10. Our dissenting colleague largely overlooks what the Council said. Quoting instead from one of this court’s decisions discussing the 1982 amendments, our colleague asserts they did not confer any new authority on trial courts at all, but rather simply reaffirmed trial courts’ preexisting broad authority under the catchall provision of that Intra-family Offenses Statute. See Dissent at 1019 note 53 (quoting Cruz-Foster v. Foster, 597 A.2d 927, 929 (D.C.1991)). We question whether Cruz-Foster supports this proposition, but in any event we rely on the Council’s actual statements.

. D.C. Council, Comm, on the Judiciary, Report on Bill 16-247 at 7 (Apr. 28, 2006); D.C. Council, Comm. on Pub. Safety & the Judiciary, Report on Bill 17-55 at 7 (Nov. 25, 2008) [hereinafter Report on Bill 17-55].

. D.C.Code § 16-1005(c) (a petitioner must show only "good cause to believe the respondent has committed or threatened to commit a criminal offense against the petitioner” in order to obtain a CPO). The Superior Court repeatedly noted its only object was to determine if Ms. Ramirez had met her burden of showing good cause to believe that Mr. Sal-vattera had committed a sexual assault.

.Our dissenting colleague looks to D.C.Code § 16-1005(c)(2) as independent authority for the vacate order. Dissent at 1017-18. We hesitate to consider a statutory provision that neither Ms. Ramirez nor the Superior Court clearly relied upon to conclude that Mr. Salvattera has failed to show a likelihood of success on the merits of his claim such that he should be denied a stay pending appeal. But in any event we are unpersuaded.
We understand the argument to be that (c)(2) should be read as broadly as (c)(ll), thereby' giving courts authority to direct where a respondent may live as an integral part of a "stay away” directive. But we see no evidence of such broad authority in the statutory language, which instead authorizes the court to order the respondent to "stay away” or have "no contact” with the petitioner. There is an obvious difference between requiring someone to have "no contact with” *1008 an individual or to "stay away from” a location where he is not, and requiring someone to "vacate” a location where he already lives. As we explained above, see note 5, under (c)(2) a court could prohibit a CPO respondent from moving his residence in close proximity to a CPO petitioner. But (c)(2) by its plain language does not authorize a court to order a CPO respondent to vacate his preexisting home. Nor do we find support for this interpretation of (c)(2) in its legislative history. What is now (c)(2) originally provided that a court could order a respondent to "avoid the presence of the family member endangered.” The current language was adopted to make this prohibition more concrete and applicable outside the familial context, see Report on Bill 17-55 at 2; there is no indication that the Council desired to give courts broader authority to issue vacate orders.
Lastly, we note that the argument that the Superior Court in this case had to issue the vacate order to effectuate its stay away order presupposes that the 100-foot stay away order imposed was the court's only option. The statute does not require these terms and the record of this case demonstrates that the court had alternatives — for the six months that Ms. Ramirez's request for a CPO was being litigated, Mr. Salvadera was subject to and fully complied with a TPO to stay 15 feet away from Ms. Ramirez's person, home, and workplace. In short, a vacate order is not a necessary companion to (c)(2) because nothing in (c)(2) requires that a stay away order be crafted so broadly that it renders a respondent like Mr. Salvadera homeless.

. In Robinson v. Robinson, we explained that "the broad remedial purpose of the Intra-family Offenses Act ... is[] to protect victims of family abuse from both acts and threats of violence.” 886 A.2d 78, 86 (D.C.2005) (emphasis added). We then observed that "[i]n furtherance of this broad purpose, the Act clearly envisions allowing safety concerns to trump property rights,” and we acknowledged that "[ajlthough ordering a person to vacate his or her home or denying the use of owned property is a serious step, not to be lightly undertaken, when the trial court finds that intra-family offenses have been committed or are imminent, it can be a necessary measure to ensure peace and safety.” Id. (emphasis added).

. The Council itself explained that the statute was "founded upon several premises: (1) family and home relationships are generally to be nurtured and protected by society; (2) actions by and between persons in a family or home type relationship can vacillate emotionally over a course of time; and (3) in the unfortunate event that abusive or harmful conduct surfaces among family or home members, criminal sanctions should not be the only avenue for correcting such abuses because problems of proof and threats to the long-term stability of the family or home may arise in the seeking of criminal sanctions.” Id. at 8.

. To this court’s knowledge, no criminal prosecution has been initiated against Mr. Salvattera.

. The dissent asserts that this court in Robinson "already has recognized that ... an order may be issued under (c)(11)" directing a respondent to vacate his separate pre-exist-ing home. Dissent at 1020-21. We cannot agree. Robinson addressed whether a husband-respondent’s property rights in a house in which he was not living at the time the CPO was issued, see 886 A.2d at 84 n. 4, were given undue consideration by the trial court in fashioning the nature of the relief afforded to the wife-petitioner in that case. This court held that they were, and we remanded for the Superior Court to "re-evaluate the situation of the parties, considering the entire mosaic of facts before it (including any developments since the entry of the last order), as well as the broad remedial measures available to safeguard Mrs. Robinson's safety and peace of mind.” Id. at 87. But we never endorsed a vacate order as the necessary remedy, Dissent at 1020-21, much less considered the trial court’s authority to issue such an order under (c)(11) (we did not even cite to this provision). Indeed, we acknowledged the possibility that the trial court could adhere to its ruling on remand. See 886 A.2d at 87 n. 8. Thus, to be clear, our ultimate point about Robinson is that it says nothing about (c)(11) and thus neither dictates nor informs our analysis in this case.

. See Doe v. Axelrod, 136 A.D.2d 410, 527 N.Y.S.2d 385, 390 (1988) (granting stay pending appeal and observing that where the case presents "novel issues of first impression ... a preliminary injunction should be granted to hold the parties in status quo while the legal issues are determined in a deliberate and judicious manner” (cited with approval in Akassy, 891 A.2d at 310)).